NAVEL ORANGE ADMINISTRATIVE COMMITTEE, Plaintiff-Appellee,

v.

EXETER ORANGE COMPANY, INC., Defendant-Appellant,

UNITED STATES of America, Plaintiff-Appellee,

v.

EXETER ORANGE CO., INC., Sequoia Orange Co., Inc., Sequoia Enterprises Inc., Carl A. Pescosolido, Jr., Marvin L. Wilson and Oleah H. Wilson, Defendants-Appellants.

Nos. 82–4333, 82–4548.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 17, 1983.

Decided Nov. 15, 1983.

Aaron B. Kahn, U.S. Dept. of Agriculture, Washington, D.C., for plaintiff-appellee.

Victor M. Epport, Epport & Delevine, Beverly Hills, Cal., for defendant-appellant.

Before GOODWIN, TANG and FARRIS, Circuit Judges.

GOODWIN, Circuit Judge.

Navel Orange Administrative Committee (NOAC), created under the Agricultural Marketing Agreement Act of 1937, 7 U.S.C. § 601, *et seq.,* to regulate the market for navel oranges from Arizona and part of California under a marketing order set forth in 7 C.F.R. § 907, *et seq.,* sued Exeter Orange Co. (Exeter) for unpaid assessments levied pursuant to the Act. NOAC prevailed on a motion for summary judgment. Exeter appeals.

In the companion case the United States sought an injunction to require handlers of navel oranges, Valencia oranges, and lemons (Exeter *et al.*) to file past and future reports and to pay future assessments as

required under the Agricultural Marketing Agreement Act. The district court granted the injunction. Exeter *et al.* appeal.

The two appeals were consolidated. Each presents the primary issue whether an enforcement proceeding can be turned into a collateral attack on the marketing order's conformity with the Agricultural Marketing Agreement Act. The answer is no.

### I.

The Agricultural Marketing Agreement Act of 1937 empowers the Secretary of Agriculture to establish agencies such as NOAC to administer marketing orders covering particular commodities (7 U.S.C. § 608c(7)(C)). Handlers of commodities covered by the Act are required to pay their pro rata share of expenses of these administrative agencies. (7 U.S.C. § 610(b)(2)(ii)).

A handler may petition the Secretary of Agriculture for modification of or exemption from a marketing order or assessments derived therefrom on grounds that they are "not in accordance with the law" (7 U.S.C. § 608c(15)(A)). The district courts are given jurisdiction to review (7 U.S.C. § 608c(15)(B)) and enforce (7 U.S.C. § 608a(6)) final determinations made by the Secretary of Agriculture. The pendency of review proceedings, however, is not to "impede, hinder or delay" enforcement proceedings (7 U.S.C. § 608c(15)(B)). Only upon a final decree by the district court covering the validity of the order do enforcement proceedings abate.

### II.

■ The Act attempts to minimize barriers to collection of assessments because successful delay even in isolated cases may encourage others to contest assessments, eventually leading to collapse of the marketing order. *United States v. Ruzicka,* 329 U.S. 287, 293, 67 S.Ct. 207, 210, 91 L.Ed. 290 (1946). The proper forum in which to raise such challenges to marketing orders is the administrative proceeding before the Secretary of Agriculture, 7 U.S.C. § 608c(15). *United States v. Ruzicka,* 329 U.S. at 292, 67 S.Ct. at 209; *Panno v. United States,* 203 F.2d 504, 509 (9th Cir.1953); *LaVerne Co-op Citrus Ass'n. v. United States,* 143 F.2d 415,

418 (9th Cir.1944). Committing substantive matters to the administrative proceeding before the Secretary of Agriculture not only minimizes collection delay, it also takes advantage of the Secretary's special expertise and interest in protecting the rights of handlers. *United States v. Ruzicka,* 329 U.S. at 292, 67 S.Ct. at 209.

■ Prior to the institution of enforcement proceedings against them, defendants had petitioned the Secretary of Agriculture contesting the marketing order and its application to them; no final ruling on the matter has yet issued. Pending resolution of the administrative proceeding, Exeter *et al.* must comply with the marketing orders. If the ultimate determination of the administrative proceeding, emanating either from the Secretary of Agriculture or from the federal courts through the statutory right of appeal, should substantiate Exeter *et al.*'s challenges to the marketing orders, then refund of any paid assessments found not to have been due would be in order.

■ Exeter argues that the § 608a(6) enforcement proceedings should be stayed until resolution of the § 608c(15)(B) proceeding. Citing *United States v. Guimond Farms,* 203 F.Supp. 471 (D.Mass.1962), which relies upon *Hecht Co. v. Bowles,* 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754 (1944), it argues that despite the express language of § 608c(15)(B), it is within the inherent equity power of the court to grant a stay. While such power may exist, we need not decide this issue. There has been no finding of unreasonable delay or bad faith such as to constitute denial of due process as required by 7 U.S.C. § 608c(15)(A); by the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.,* or by the Fifth Amendment. The district court weighed the equities and found against Exeter. The denial of such a stay was not an abuse of discretion. *Landis v. North American Co.,* 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936).

### III.

■ Exeter alleges that there was insufficient proof that the $16,393.46 in unpaid

assessments sought by NOAC was in fact the amount due. The amended complaint stated that Exeter owed $16,393.46 in unpaid assessments, that the assessments were levied pursuant to Marketing Order 907, and that they arose from Exeter's handling of oranges. NOAC's manager affirmed these allegations in a declaration filed in support of the motion for summary judgment. Exeter offered nothing to contradict this declaration. Instead, Exeter relied on its general denial. Under Fed.R.Civ.P. 56(e), an adverse party may not oppose a motion for summary judgment resting "upon the mere allegations . . . of his pleadings," but must rather "set forth specific facts showing that there is a genuine issue for trial." *Turner v. Loc. U. No. 302, Intern. Broth. of Team.*, 604 F.2d 1219, 1228 (9th Cir.1979). The district court's order is accordingly affirmed.

### IV.

■ The district court did not commit error in granting the preliminary injunction in essence ordering Exeter *et al.* to comply with the requirements demanded of them under the Agricultural Marketing Agreement Act. In order to obtain a preliminary injunction, a plaintiff must show either that it has a likelihood of success on the merits and will suffer irreparable injury if the injunction is not granted or that serious questions are raised and the balance of hardships tips sharply in its favor. *Knudsen Corp. v. Nevada State Dairy Comm'n*, 676 F.2d 374, 378 (9th Cir.1982). When the government is seeking compliance pursuant to a statutory enforcement scheme, irreparable injury from a denial of enforcement is presumed. *United States v. Cappetto*, 502 F.2d 1351, 1358–59 (7th Cir.1974), *cert. denied*, 420 U.S. 925, 95 S.Ct. 1121, 43 L.Ed.2d 395 (1974); *American Fruit Growers v. United States*, 105 F.2d 722, 725 (9th Cir. 1939).

### V.

Exeter *et al.* assert that there was insufficient evidence to support the preliminary injunction. The only questions properly before the district court were whether Exeter *et al.* were either handlers or controllers of handlers and whether they had failed to comply with the marketing orders. Exeter and Sequoia have admitted that they are handlers and that they have not complied with the marketing orders for the period in question. The only evidence offered in regard to Enterprises indicated that the administrative committee had determined that Enterprises was a handler and that it had not complied with the marketing order for the period in question. Exeter *et al.* admitted that the three individual defendants were officers of Sequoia. Further, there was evidence that the administrative committees had determined that these three individuals were controlling persons of the three corporate defendants.

■ Exeter *et al.* raise hearsay objections to much of the testimony of the committee managers. These managers had made an administrative determination that the defendants were handlers. When examined as to the basis of this determination, they testified as to what their agents and employees had learned through investigation and had reported to them. The head of an administrative agency need not have first-hand knowledge of all the facts that inform an agency's understanding in order to testify. Further, there was adequate evidence admitted without hearsay objection to support the district court's findings. In short, the evidence was sufficient for the district court to conclude that the government was likely to prevail on the merits.

### VI.

■ Under the Paperwork Reduction Act of 1980, 44 U.S.C. § 3501, *et seq.*, forms provided by government agencies for the collection of information must conform to certain standards. Exeter *et al.* contend that they are excused from filing reports because the forms supplied by their respective administrative committees did not conform to the Act's requirements. This argument has no merit. As concluded above, a defendant in an enforcement action cannot raise affirmative defenses which have not

first been finally determined in a § 608c(15)(A) administrative proceeding. Furthermore, even if the court had jurisdiction to hear affirmative defenses to an enforcement proceeding, there was compliance with the Act. Under 44 U.S.C. § 3512, a party need not supply information only if the government form is without a control number. The government sought injunctive relief only for periods when the report forms carried control numbers.

## VII.

■ When Exeter sought to depose NOAC's general manager regarding the factual basis of Exeter's affirmative defenses, NOAC sought and was granted a Fed.R.Civ.P. 26(c) protective order barring Exeter from discovering matters related to those defenses. The court's reasoning was simple: if the affirmative defenses are not cognizable in an enforcement proceeding, discovery relating to those defenses is irrelevant and immaterial. In granting the protective order, the district court acted within its broad discretion to promote "the just, speedy, and inexpensive determination of every action." Fed.R.Civ.P. 1; *Herbert v. Lando,* 441 U.S. 153, 177, 99 S.Ct. 1635, 1649, 60 L.Ed.2d 115 (1970); *Ellis v. Brotherhood of Ry., Airline & S.S. Clerks,* 685 F.2d 1065, 1071 (9th Cir.1982), *cert. granted,* — U.S. ——, 103 S.Ct. 1767, 76 L.Ed.2d 341 (1983). The protective order granted against Exeter *et al.* was appropriate for the same reasons.

## VIII.

■ In answer to the government's complaint, Exeter *et al.* filed a motion for a more definite statement and a motion to dismiss for insufficiency. The court granted the government's motion for a preliminary injunction without ruling on Exeter *et al.*'s two motions. There is no merit to Exeter *et al.*'s assertion that the trial court abused its discretion by refusing to grant a continuance pending a ruling on their motions.

## IX. *Propriety of the injunction*

### a. Fifth Amendment

■ Exeter *et al.* argue that the possible impending criminal prosecution of the individual appellants on related charges implicates their Fifth Amendment privilege against self-incrimination and thereby excuses them from supplying the government with the requested information. There is no merit to this argument. Corporations have no privilege against self-incrimination. *United States v. Kordel,* 397 U.S. 1, 7–8, 90 S.Ct. 763, 766–767, 25 L.Ed.2d 1 (1970) and cases cited therein. Here the government is seeking information from a corporation. The fact that the individual officers who have access to that information believe that the information will incriminate them personally does not excuse the corporation from producing that information. Although the individual appellants themselves may not be compelled to produce the information that they allege is incriminating, they may not prevent the corporate appellants from producing that information. Further, even if the court's order were interpreted to mean that the individual appellants were required to file reports, they would still have no Fifth Amendment privilege because the information is necessary for the functioning of a pervasive regulatory scheme. *Shapiro v. United States,* 335 U.S. 1, 32–35, 68 S.Ct. 1375, 1391–1393, 92 L.Ed. 1787 (1948).

### b. *Specificity of the injunction*

■ Exeter *et al.* argue that the terms of the district court's order enjoining them are too broad and unspecified for them to comply with the injunction. There is no merit to any of their arguments. The order is as specific as the subject matter permits. The fact that the order does not specify a dollar amount is the result of Exeter *et al.*'s refusal to file the necessary reports. If they had filed the reports, the government would have had a basis upon which to calculate the unpaid assessments. A court complies with Fed.R.Civ.P. 65(d) if it "frame[s] its orders so that those who must obey them will know what the court intends to require

and what it intends to forbid." *Longshoremen's v. Marine Trade Ass'n,* 389 U.S. 64, 76, 88 S.Ct. 201, 208, 19 L.Ed.2d 236 (1967). Here, it is clear that Exeter *et al.* understand what is required of them.

X.

██ Sequoia Enterprises, Inc. and the individual defendants argue that they are not handlers and were therefore not entitled to a section 608c(15)(A) forum for their grievances. They argue that it follows that they must be permitted to raise their defenses in an enforcement action in district court. Since they were not permitted to do so, they assert that the injunction is improper as to them.

Although the government presented admissible evidence that all defendants were handlers, the only question before the court was whether there was a basis for the administrative committees' determination that defendants were handlers. Since there was a basis for the determination, further challenges must be raised in the section 608c(15) administrative proceeding. *United States v. Lamars Dairy,* 500 F.2d 84, 85 (7th Cir.1974). Furthermore, even if the individual defendants were not handlers, they would still properly be within the scope of the injunction as officers, agents, or employees of the handlers. None of their arguments that the injunction is improper as to them withstands scrutiny.

The district court judgments are affirmed, and the cases are remanded for any further proceedings.