C & W CONSTRUCTION COMPANY, a sole proprietorship, Cher Mungovan and Walter Mungovan, Plaintiffs,

v.

BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, LOCAL 745, AFL–CIO; Walter H. Kupau; William O. Nishibayashi; Ralph Torres; and Steven Suyat, Defendants.

Civ. No. 83–0710.

United States District Court, D. of Hawaii.

Dec. 5, 1985.

Damon, Key, Char & Bocken, Charles H. Hurd, Peter J. Herman, Honolulu, Hawaii, Buchalter, Nemer, Fields, Chrystie & Younger, Arthur Chinski, Harry Melkonian, Jovina Hargis, Olympia L. Pachares, Los Angeles, Cal., Center of Nat. Labor Policy, Michael Ernest Avakian, North Springfield, Va., for plaintiffs.

Pyun, Okimoto & Thomason, Matthew Pyun, Jr., Honolulu, Hawaii, for Walter Kupau.

Winston Mirikitani, Honolulu, Hawaii, for Ralph Torres and Steven Suyat.

Samuel King, Jr., Adrienne King, Honolulu, Hawaii, for Steven Suyat.

Erick T.S. Moon, Herbert R. Takahashi, Honolulu, Hawaii, Marsha Berzon, Altshuler & Berzon, San Francisco, Cal., Renee

Yuen, Richard Perkins, Honolulu, Hawaii, for William Nishibayashi.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW; ORDER

PENCE, District Judge.

On October 3, 1985, this court heard (1) plaintiffs' motion for discovery sanctions or, in the alternative, for a protective order to limit admission of evidence by defendant BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, Local 745, AFL–CIO (hereinafter, "the union"); (2) plaintiffs' motion to compel defendants NISHIBAYASHI, TORRES, and SUYAT ("the business agent defendants") to answer interrogatories or, in the alternative, for a protective order to limit testimony by the same defendants; (3) defendant TORRES' motion for protective order; and (4) oral delivery, on the court's initiative, of its ruling on the magistrate's Report and Recommendation filed August 2, 1985 regarding attorneys' fees sanctions imposed upon defendant union. Charles H. Hurd and Peter J. Herman appeared for plaintiffs, Erick T.S. Moon for defendant union, Matthew S.K. Pyun, Jr. for defendant KUPAU, Richard K. Perkins for defendant NISHIBAYASHI, Winston Mirikitani for defendant TORRES, and Samuel P. King, Jr. for defendant SUYAT.

The court, having read the many memoranda filed in connection with the above-listed motions, having reviewed the voluminous files in this case, having considered the arguments of counsel, and being fully advised of the premises herein, hereby makes its findings of fact, conclusions of law, and order. Any finding of fact which might more properly be termed a conclusion of law is hereby adopted as such, and vice versa:

## I. FINDINGS OF FACT

1. The plaintiffs' complaint was filed in July 1983.

2. From that time until the substitution of new counsel was made final in July 1985, defendant union consistently resisted answering the interrogatories and document requests first served upon it by plaintiffs in September 1983. Since July 1985, the union has either continued its previous stonewalling, or its efforts to gather the information necessary to answer the interrogatories have been unaggressive.

Plaintiffs have spent much costly time and effort in seeking answers to their interrogatories. Defendant union claims to have labored mightily, but its latest responses were also inadequate.

3. The individual business agent defendants were served in September 1983 with requests for answers to interrogatories and for related documents. At that time, their perjury cases were still pending and their appeals had not yet been exhausted. These defendants asserted their fifth amendment privilege in response to the requests. In May 1985, after these defendants had lost their appeals and served their jail sentences, plaintiff again served them with a similar set of requests. They again asserted the privilege.

This court expresses no opinion as to the good faith, propriety, or necessity of the business agent defendants' continued assertion of the privilege, nor does it speculate about the chances that further criminal proceedings will be brought against these defendants.

4. On May 1, 1985, this court, in affirming a magistrate's recommendation as not "clearly erroneous or contrary to law," warned the union that if it continued to be unresponsive to discovery requests, it could face the serious sanctions sought by plaintiffs. These included plaintiffs' request for a protective order similar to that granted by this court at oral hearing and set forth below. Since May 1985 at the very latest, then, the union has been on specific notice that continued inadequate responses to the plaintiffs' interrogatories could result in the evidentiary bar imposed by this court.

Following up on its May 1, 1985 Order, this court on May 6, 1985 ordered the union to serve upon the plaintiffs "further an-

swers to interrogatories 1–13, inclusive, *in complete form,* and that said answers shall be served on or before June 17, 1985" (emphasis added). On June 17, 1985 the union provided "further" answers but no further documents. These answers were not nearly "complete" and certainly were not adequate.

In a memorandum filed August 5, 1985, defense counsel Moon argued that this court's May 6 Order requires of the union only "further answers not full answers" to the interrogatories. This is a good example of an attempt to excuse unresponsiveness of the union which is not excusable.

5. The union originally appointed Harry Murakami, its president at the time, as its agent to respond to plaintiffs' interrogatories. He signed responses dated January 30, 1984, which stated that he had no knowledge of the facts. This court finds that the union's appointment of Murakami, and his responses, were mere gestures, not a good-faith attempt to comply with discovery obligations.

The union subsequently appointed Samson Mamizuka, its new president, to provide the required additional answers. To date the union has never adequately responded to the interrogatories.

6. After plaintiffs filed the instant motion, the union made some attempt to comply with this court's May 1 and May 6, 1985 Orders. Assuming, without. finding, that the union acted in good faith with these recent efforts, they amount to too little too late.

7. In these recent efforts to investigate, the union's new counsel did not adequately press the interviewed picketers for any answers or for more detailed answers.

The statement in defense counsel Moon's memorandum that the picketers "expressed a reluctance to approximate or be pinned down to specifics" neither fulfills nor excuses the union's discovery obligations. This court makes no finding, and refuses to speculate, as to the apportionment of responsibility between client and counsel for the union's chronic failures to answer the

interrogatories. As detailed in the Conclusions of Law below, what is clear is that the union may properly be sanctioned even if the silence of the individual defendants made the information sought by the interrogatories more difficult (or even impossible) for the union to obtain.

8. As for related documents requested by plaintiffs, the union again provided the plaintiffs with picket logs which had already been produced, but which were in no way organized or digested. No further documents responsive to interrogatories 1–13 have been produced.

9. The union had more than enough time to comply with the several discovery orders of this court, of Judge King, and of Magistrate Tokairin.

## II. CONCLUSIONS OF LAW

1. The union is not a natural person and is therefore not entitled to assert the fifth amendment privilege against compelled self-incrimination. *See United States v. White,* 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944); *Campbell Painting Corp. v. Reid,* 392 U.S. 286, 88 S.Ct. 1978, 20 L.Ed.2d 1094 (1968); *United States v. Kordel,* 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970).

2. This court concludes, as did Judge King in his February 8, 1985 Order of Remand to the magistrate, that the information sought in interrogatories 1–13 is "information available to the defendant union through its collective membership, not information from independent sources equally available to both parties," and that "[a]s such, the defendant union must provide the information unless the burden of production on the defendant union outweighs the benefit the information would provide to plaintiffs." *Id.* at 7. On remand, Magistrate Tokairin found that the union was indeed obligated to provide the information.

This court independently concludes that the information needed to respond to plaintiffs' interrogatories 1–13 was more available to the union than to plaintiffs, that the information is at the very heart of plain-

tiffs' case, and that the union was responsible for obtaining the information. *See* Judge King's Order of February 8, 1985, at 6, and cases cited therein.

Finally, it cannot be said that the union made reasonable inquiry. Its attempts to investigate, and those of its counsel, were clearly inadequate. *Cf. Asea, Inc. v. Southern Pac. Transp. Co.,* 669 F.2d 1242, 1247 (9th Cir.1981).

In several cases courts have affirmed the obligation of organizations to turn over information gathered in internal investigations of alleged wrongdoing by the organization's agents or employees. *See, e.g., Carter-Wallace, Inc. v. Hartz Mountain Industries,* 553 F.Supp. 45 (S.D.N.Y.1982).

■ The union has argued, however, that it has not been able to respond to the plaintiffs' interrogatories because the four individual defendants have asserted their fifth amendment privilege and remained completely silent. But while the individual defendants may not be compelled to produce reports that incriminate them, they have no right to prevent the union from producing the equivalent information. *See Naval Orange Administrative Committee v. Exeter Orange Co.,* 722 F.2d 449, 452 (9th Cir.1983).

■ 3. In an earlier stage of this proceeding, Magistrate Tokairin found that the union's failure to respond adequately to discovery requests was not the result of bad faith. In both orders he entered before recusing himself, Judge King avoided making any finding as to bad faith or the absence thereof.

Following a comprehensive, *de novo* review of the entire record of this case, this court concluded that the union had failed to produce complete responses to interrogatories 1–13 as required, and that in repeatedly so failing, the union had acted in bad faith.

While this court finds willfulness on the part of the union, no such finding is necessary for the preclusionary sanction imposed, even though such a finding might be a necessary predicate for the sanction of outright dismissal. *Cf. National Hockey League v. Metropolitan Hockey Club,* 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976).

4. Rule 37(b)(2), F.R.Civ.P., provides in pertinent part:

> If a party ... fails to obey an order to provide or permit discovery ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
>
> \*    \*    \*    \*    \*    \*
>
> (B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence;

The Order entered by this court today is made under the authority of Rule 37(b)(2)(B). The court orders to provide discovery that have been violated by the union include, but are not limited to, this court's Orders of May 1 and May 6, 1985, directing the union to provide complete responses to plaintiffs' interrogatories 1–13.

5. The union's last-minute attempts to comply with discovery orders will not save it from the imposition of serious sanctions. *See G.K. Properties v. Redevelopment Agency of San Jose,* 577 F.2d 645 (9th Cir.1978).

6. An evidentiary bar against the union is fully appropriate in a case such as this. *In re Anthracite Coal Antitrust Litigation,* 82 F.R.D. 364 (M.D.Pa.1979). *See also State of Ohio v. Arthur Andersen & Co.,* 570 F.2d 1370, 1374–75 (10th Cir.1978) (rule 37(b)(2)(B) preclusionary sanction imposed where foreign secrecy laws, not assertion of fifth amendment privilege by agents of disobedient corporation, were stated reason for disobedient corporation's violation of discovery order); *Independent Productions Corp. v. Loew's Inc.,* 27 F.R.D. 426 (S.D.N.Y.1961) (sanction of dismissal ordered where managing agent of disobedient corporation asserted fifth amendment). See generally Renfrew, *Discovery Sanctions: A Judicial Perspective,* 67 Calif.L.Rev. 264 (1979).

7. An individual party cannot assert the fifth amendment privilege as a shield against discovery and then convert it to a sword by testifying at trial. *Duffy v. Currier,* 291 F.Supp. 810 (D.Minn.1968); *Backos v. U.S.,* 82 F.R.D. 743, 745 (E.D. Mich.1979); *see also Navel Orange Administrative Committee v. Exeter Orange Co.,* 722 F.2d 449 (9th Cir.1983). Individual defendants Nishibayashi, Torres, and Suyat will not be permitted to testify about any matter regarding which they have asserted their fifth amendment privilege.

8. It is not the law, as plaintiffs urge, that even assuming the individual defendants can properly interpose their fifth amendment privilege against the plaintiffs' discovery requests, they cannot interpose the privilege against a request made to them *by the union. Navel Orange,* 722 F.2d 449 (9th Cir.1983), does not stand for this proposition.

9. It is however also not the law, as the union has claimed, that an entity cannot be sanctioned for a failure to comply that results from the assertion of privilege by the entity's agents. The United States Supreme Court disposed of that notion in *George Campbell Painting Co. v. Reid,* 392 U.S. 286, 88 S.Ct. 1978, 20 L.Ed.2d 1094 (1968) (company's statutory loss of right to obtain contracts with State of New York because its president asserted fifth amendment privilege in grand jury proceedings held not violative of fifth amendment), and later cases have followed its reasoning.

Even if this court had not found the union's unresponsiveness to be in bad faith, the fifth amendment would not prevent this court from exacting a price from the *union* for the fifth amendment assertions of its *agents.*

10. The Magistrate's Report and Recommendation filed August 2, 1985, recommending that attorneys' fees and costs of $22,453.89 be paid to plaintiffs by the union was not clearly erroneous or contrary to law. None of the union's three objections has merit, viz: (i) there has been adequate substantiation of the legal services rendered; (ii) the hourly rates are not excessive; and (iii) the charges submitted do not represent a duplication of services.

THEREFORE, IT IS HEREBY ORDERED:

1. The union is precluded from offering any evidence regarding a number of subjects which this court has determined were implicated, directly or by inference, by plaintiffs' interrogatories 1–13, to which the union did not respond. The legal issues possibly affected (but not decided or foreclosed) by this preclusion include, without limitation, plaintiffs' allegations of secondary boycott; conspiracy to restrain trade, unfair trade practices and refusal to deal; scheme to defraud or extort; inducement to breach of contract and interference with prospective economic advantage; and infliction of emotional distress.

The union will not be permitted to offer any evidence (direct or in rebuttal, at trial or hearing on any motion, in any form, including oral testimony, affidavit or document), which relates to the following subjects:

(a) Conduct, if any, by union employees, representatives or members, including picketers (hereinafter collectively called "union actors"), at the three picketed C & W jobsites (the "Swain job," the "Ketchum job," and the "Atlas Furs/Aucoin job") and also at the fourth jobsite (the "spec. job in Maui Meadows"), which conduct includes acts and communications by any union actor with C & W employees (including Cher and Walter Mungovan), employees of materials suppliers ("materialmen"), subcontractors, or any others having dealings with C & W (including delivery drivers) at the jobsites, and which conduct tended to induce others not to perform such services, or to perform them in some manner or place less convenient to C & W.

(b) Conduct, if any, by union actors away from the four C & W jobsites, including acts and communications with employees of C&W, materialmen, subcontractors, architects, property owners, governmen-

tal authorities, or any others, which conduct tended to induce such persons to inconvenience or disadvantage C & W or make it more difficult or costly for C & W to obtain materials or services from suppliers or subcontractors or such other persons, either for existing C&W jobs or for future work.

(c) Communications by all defendants, if any, through the mails or by telephone or other media of interstate communication, tending to advance any attempt by defendant union to convince plaintiffs that wages and benefits provided by C & W were substandard. Similarly, all defendants' communications tending to extort from plaintiffs a collective bargaining agreement. Similarly, all defendants' acts and communications tending to punish plaintiffs for resisting a collective bargaining agreement, including without limitation acts tending to intimidate witnesses or suppress evidence.

(d) The alleged impersonation of FBI agents and attempted kidnap of Walter Mungovan, by union actors, in May 1983.

(e) Acts or communications, if any, by mail or telephone from union actors to plaintiffs or other C & W employees, tending to injure either or both of the Mungovans in their emotional well-being, including but not limited to "hate" mail, threatening telephone calls, damage to or theft of personal property, and any other alleged acts of intimidated by union actors.

2. Defendants Nishibayashi, Torres, and Suyat will not be permitted to testify (in any form, by affidavit or oral testimony at hearings or trial) as to any matter described above in Item 1 of this Order.

Because of their repeated blanket assertion of the privilege throughout discovery, and the consequences described in Item 7 of the Conclusions of Law above, and because this Order is intended to avoid minitrials within the trial on the merits, the inability of said defendants to testify to a matter shall be presumed, unless it be shown that the matter as to which their

testimony is sought falls outside the ambit of Item 1 of this Order.

3. The Magistrate's Report and Recommendation filed August 2, 1985 is hereby approved. Defendant Union shall pay forthwith to plaintiffs, through their attorneys, the sum of $22,453.89.

4. Defendant TORRES' motion for protective order is denied as moot.

5. Plaintiffs will be awarded further attorneys' fees and costs, incurred since February 1985, relating to the instant motions. Plaintiffs' attorney shall propose an amount of such fees and costs to defendant union's counsel. If the union's counsel do not agree to that amount, this court will convene a chambers conference to resolve the amount without need for further motions.