**UNITED STATES of America, Plaintiff,**

v.

**Takeo MATSUMOTO, Defendant.**

**Crim. No. 89–01785.**

United States District Court,
D. Hawaii.

Feb. 11, 1991.

Daniel Bent, U.S. Atty., R. Michael Burke, Asst. U.S. Atty., Honolulu, Hawaii, for plaintiff.

C. George Sphikas, Case & Lynch, Samuel P. King, Jr., Honolulu, Hawaii, for defendant.

## MEMORANDUM DECISION

PENCE, Senior District Judge.

### I. *Introduction*

Defendant Takeo Matsumoto's ("Matsumoto") Motion to Dismiss Indictment ("Motion to Dismiss") presents a very novel legal argument. It seeks dismissal of the Indictment on the grounds that the visa application form, on which defendant is charged with making a fraudulent statement, was not marked with an Office of Management and Budget ("OMB") control number, as required by the Paperwork Reduction Act of 1980, 44 U.S.C. § 3501 et seq.

### II. *Background*

On November 17, 1989, defendant disembarked a flight arriving from Japan and made application for admission to the United States at Honolulu International Airport. Defendant presented his Japanese passport which contained a nonimmigrant visitor's visa.

On November 19, 1989, immigration officials received a copy of a criminal history check on defendant. This criminal history check allegedly indicated that defendant had two convictions for assault, both of which occurred in January, 1968 in Japan. Also on November 19, immigration officials received a copy of a July 20, 1988 non-immigrant visa application, through which defendant had obtained his visa and on which defendant had indicated that he had never been arrested for any offense or crime.

On November 29, 1989, a two-count Indictment was filed against defendant. Based on his representation in his visa application that he had never been arrested, Count 1 of the Indictment charged defendant with knowingly making a false writing containing a materially false statement in violation of 18 U.S.C. § 1001. Based on his use of the visa obtained through the aforementioned visa application, Count 2 of the Indictment charged defendant with knowingly using a visa knowing the same to have been procured by means of a false statement in violation of 18 U.S.C. § 1546.

## III. *Discussion*

■ The Paperwork Reduction Act of 1980 ("PRA"), 44 U.S.C. § 3501 et seq., requires federal agencies gathering information from the public to have all forms used for gathering information approved by the OMB and identified with an OMB control number. The visa application form signed by defendant in 1988 was created by the Department of State, a federal agency within the scope of the Paperwork Reduction Act. However, no OMB control number appears on that form.[1]

Defendant argues that if a form signed by a person does not display an OMB control number as required by the PRA, the person signing the form cannot be subjected to any criminal prosecution or any other penalty for failing to provide information requested by the form. In support of his argument defendant cites 44 U.S.C. § 3512, the so called "Public Protection" section of the PRA, which declares in pertinent part:

[n]otwithstanding any other provision of law, no person shall be subject to any penalty *for failing to maintain or provide information* to any agency if the information collection request involved was made after December 31, 1981, and does not display a current control number assigned by the Director, or fails to state that such request is not subject to this chapter.

(Emphasis added.)

In further support of his argument, defendant cites a recent case which interprets the language of § 3512. In *United States v. Hatch*, 919 F.2d 1394 (9th Cir.1990), the defendant was charged in two separate informations with unlawfully and knowingly constructing a road on National Forest Service land without the authorization required by 16 U.S.C. § 551 and 36 C.F.R. § 261.10(a).

Defendant moved to dismiss the charge against him because the application forms for the special use authorization did not display OMB control numbers as required by 44 U.S.C. § 3507(f). The lower court denied the motion but the Ninth Circuit reversed. The court relied on § 3512 in holding that since the forms provided by the Forest Service did not display a proper OMB control number, the Informations filed against defendant did not state proper criminal charges and had to be dismissed. *Hatch*, 919 F.2d at 1398.

After citing *Hatch*, Matsumoto reasons by analogy. If the charges against the defendant in *Hatch* were dismissed because the forms he failed to submit lacked OMB control numbers, then the charges against Matsumoto similarly should be dismissed since the visa application he submitted with false information also lacked an OMB control number in violation of the PRA.

The government disagrees. As a preliminary matter, it points out that 18 U.S.C. § 1001, under which Matsumoto is charged here, prohibits false verbal statements as well as false written statements to the government. After pointing this out, the government notes that verbal statements lack OMB control numbers but are nevertheless subject to prosecution. It argues by implication that written statements should be treated no differently.

However, the government's argument is flawed. First, it fails to explain why the PRA's non-coverage of "oral" statements in any way impugns the legitimacy of its coverage of written statements. This case involves a written, not an oral, statement and thus the PRA clearly applies. Similarly, the government is unable to demonstrate how 18 U.S.C. § 1001 supersedes 44 U.S.C. § 3512. Section 3512 states that it applies "notwithstanding any other provision of law."[2]

---

1. According to defendant, no number has ever been issued for the English/Japanese version of the form which defendant signed. The all English form, on which the English/Japanese version is based, does have an OMB control number in the upper right hand corner as required by the PRA and OMB regulations. Defendant claims that he has never seen the all-English version of the visa application form and did not fill out or sign such form.

2. In his Reply, defendant further exposes the weakness of the government's argument by pointing out that oral requests are as much subject to OMB approval under the PRA as written requests. 5 C.F.R. § 1320.7(c)(1) states

Accordingly, the only issue to resolve here is whether § 3512 applies in the first place. Concerning this issue, the government's argument is much more persuasive. To begin, the government refers to the plain language of § 3512, to wit, "... no person shall be subject to any penalty *for failing to maintain or provide information* to any agency if the information collection request ... does not display a current control number ..." (Emphasis added.)

According to its plain language, § 3512 shields from penalty *only* those persons who *fail* to *maintain* or *provide* information on federal information collection requests without OMB control numbers. It would appear, then, that such protection is not extended to those persons who *do* maintain or provide information on such a defective form when the information happens to be false or incorrect. Hence, the government concludes, *Hatch* may be distinguished from the instant case since *Hatch* involved a failure to maintain or provide information whereas the instant case involves no such failure. To the contrary, defendant did indeed provide information and therefore § 3512 does not apply to shield him from liability for his misrepresentation.

In response, defendant points to the legislative history of § 3512 in contending that the scope of the words "failing to maintain or provide information" is broad enough to include "improperly providing information." More specifically, in listing the key provisions of the PRA, the Senate Report on the PRA states:

> Sixth, § 3512, the Public Protection Section, provides that no person shall be subject to any penalty for not filling out a Federal form *or otherwise responding to an information request* if the request does not either display an OMB control number or, if not, state why not. This enables the public to ignore 'bootleg' requests that do not conform to this Act's clearance requirements.

1980 U.S.Code Cong. & Admin.News 6241, 6254. (emphasis added).

Defendant relies on the emphasized language of the above quotation to assert that "otherwise responding to an information request" may include providing incorrect information. While Defendant's argument is forceful, it flies in the face of the plain language of § 3512.

Once again, § 3512 states that "no person shall be subject to any penalty *for failing to maintain or provide information* to any agency if the information collection request ... does not display a current control number." There appears to be nothing ambiguous about the words "failing to maintain or provide information."

"Failing" is the gerund form of the verb "to fail." In the sense most consistent with the context of § 3512, Webster's New Collegiate Dictionary (1975) defines the verb "to fail" as follows: "to leave undone: neglect." In the same context, Webster's New Collegiate Dictionary further defines "to maintain" as follows: "to affirm in or as if in argument: assert." Finally, in yet the same context, Webster's defines "to provide" as follows: "to supply for use: afford, yield." Read together, the plain meaning of these words equates to the following: "to neglect to assert or supply for use." Such language precludes the possibility of actually "asserting or supplying for use" as defendant would stretch the language to mean.

Given the plain meaning of the language of § 3512, any confusion created by the aforementioned legislative history is irrelevant. In *Blum v. Stenson*, 465 U.S. 886, 896, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1983), the United States Supreme Court held that where "a question of federal law turns on a statute and the intention of Congress, we look first to the statutory language and then to the legislative history *if the statutory language is unclear.*" (Emphasis added.) *See also Miller v. Civil City of South Bend*, 904 F.2d 1081, 1107 (7th Cir.1990) ("[R]esort to legislative history ... is unnecessary when the intent is clear from the statute's terms."); *Meredith v. Bowen*, 833 F.2d 650, 654 (7th Cir.1987)

that "collection of information" under the PRA    includes "oral communications."

("[W]hile legislative history is particularly helpful in guiding a court's interpretation when a statute is ambiguous, a court need not look beyond the words to interpret a statute if the language is clear and unambiguous." (citations omitted)).

Here, since the language of the statute at issue is clear and unambiguous, this court need not look beyond the statute's words and examine the statute's legislative history. Accordingly, the Senate Report's "otherwise responding to an information request" language cannot expand the scope of the clear and unambiguous language of § 3512 to protect form users who supply incorrect information.

Nonetheless, defendant argues that the legislative history of the statute reveals that Congress enacted the PRA motivated in part by the overarching policy of protecting citizens who fear the bureaucratic deluge of government forms. In the prefatory section of the Senate Report on the PRA, the Senate cites the various reasons for enacting the PRA. The Report states:

> Most frightening was the testimony of several witnesses who said they were 'afraid of their government.' They had been bombarded with Government forms, neglected *or wrongly answered* some particular form, and were afraid that the 'Government' was going to get them as a result—a nagging feeling of fear.

1980 U.S.Code Cong. & Admin.News 6244 (emphasis added).

As already noted, appeals to legislative history have no relevance here given the statute's clear and unambiguous language. Nevertheless, even if it were relevant in this instance, the "wrongly answered" language of the previous quotation does not encompass the sort of conduct with which defendant Matsumoto is charged.

Matsumoto is charged with fraud, which requires a criminal *mens rea* in addition to an *actus reus*. However, the "wrongly answered" language of the Senate Report speaks only to an *actus reus*, i.e., the act of incorrectly filling out a form. Given the context of the Senate Report language, which treats of frightened citizens who are intimidated by the onslaught of red tape, it

seems probable that "wrongly answered" refers to good faith mistakes made by flustered form fillers, not criminal misrepresentations made by cool-headed fraudfeasors. Thus, § 3512 certainly protects against nonfeasance and may even protect against misfeasance. It does not, however, protect against malfeasance.

As a result, defendant may gainsay his alleged culpability in furnishing false information as vociferously as he likes. His protestations are of no moment at this juncture. The fact remains that he is *charged* with fraud under 18 U.S.C. § 1001. Because 44 U.S.C. § 3512 extends no protection to fraudfeasors, the indictment may not be dismissed on the grounds that an OMB control number does not appear on the Visa Application. If defendant wishes to prove that his alleged criminal conduct falls under the "wrongly answered" language of the Senate Report, i.e., that he did not have the requisite *mens rea*, then he will have to wait for a trial on the merits to do so.

Finally, defendant contends that under § 3512 unapproved forms constitute "bootleg" forms which are of no legal force or effect. Thus, defendant suggests that § 3512 affords a remedy for government misconduct which is akin to the remedy afforded by the Exclusionary Rule. Under the Exclusionary Rule, if government agents violate the constitutional rights of the citizenry in obtaining evidence during a criminal investigation, then that evidence will be excluded from use at trial for any subsequent criminal prosecution related to that investigation.

However, defendant is not entitled to a comparable remedy here. The rationale behind the Exclusionary Rule is to deter any future government misconduct by excluding the fruits of illegal police tactics. *See, e.g., Elkins v. United States*, 364 U.S. 206, 217, 80 S.Ct. 1437, 1444, 4 L.Ed.2d 1669 (1960) (explaining that the purpose of the Exclusionary Rule is to deter the government from trampling on the citizenry's constitutional rights in searching for incriminating evidence). As applied to § 3512 in the context of this case, the Exclusionary

Rule rationale does not carry over. The legislative history of the PRA cited above makes clear that the rationale behind § 3512 is to shield the public from being bombarded with unauthorized forms. Thus, § 3512 focuses on protection of the public, not deterrence of the government.

It does not follow, though, that the legislators who enacted § 3512 sought to protect criminal fraudfeasors. The legislative history suggests that Congress sought to protect the unwary, victimized public, not the calculating criminal. While the Exclusionary Rule may incidentally benefit all criminals since it aims to deter government misconduct regardless of the government's victim, § 3512 may not benefit all criminals since its aim is to protect the *non*feasor, not the *mal*feasor.

## IV. *Conclusion*

For the reasons stated above, defendant's Motion to Dismiss Indictment is DENIED—and it is so ordered.