967 F.2d 594
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Tani Hiroyuki LEE, Defendant-Appellant.
 No. 91-10297.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 8, 1992.
Decided June 25, 1992.
 
 Before CYNTHIA HOLCOMB HALL, BRUNETTI and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Tani Hiroyuki Lee appeals his conviction and sentence for making a false statement in naturalization proceedings in violation of 18 U.S.C. § 1015(a) and procurement of naturalization unlawfully in violation of 18 U.S.C. § 1425. We vacate both convictions and remand for the district court to enter a conviction on one count.
 
 
 3
 * After hearing evidence that Lee could understand simple, conversational English, the district court ordered an unusual translation procedure for Lee's testimony. Lee was to listen to each question in English. After he heard the question, Lee could choose to answer it in English or ask the interpreter to translate it into Japanese for him. The district court ordered this procedure without consulting the defendant personally, but Lee's counsel did not object. Lee indicated to the district court that he understood the procedure, and the district court monitored the procedure throughout Lee's testimony and found that Lee was turning his head toward the interpreter when he desired a translation.
 
 
 4
 Lee was provided properly with an interpreter and no waiver, therefore, was necessary. In United States v. Lim, 794 F.2d 469, 471 (9th Cir.), cert. denied, 479 U.S. 937 (1986), we held that "[a]s long as the defendants' ability to understand the proceedings and communicate with counsel is unimpaired, the appropriate use of interpreters in the courtroom is a matter within the discretion of the district court." In Lim, the court, sua sponte and without obtaining permission of the defendants, borrowed the interpreter from defendants' table and used the interpreter to translate the testimony of a witness. On one occasion, defendants were left without any interpreter at their table. The interpreter, however, spoke into a microphone so that defendants could understand the testimony. Id. Thus, no waiver was necessary. Id. at 472.
 
 
 5
 Lim stands for the proposition that the district judge has discretion to control the use of interpreters unless the defendant's ability to understand the proceedings is actually compromised. Id. at 471. This is especially so where a defendant, such as Lee, fails to object below. See United States v. Yee Soon Shin, 953 F.2d 559, 561 (9th Cir.1992). Lee has not proffered any evidence demonstrating that he actually misunderstood particular questions or gave defective answers as a result of the district court's interpretation procedure. The best Lee can do is to argue that "this court can have no confidence that defendant's understanding of the questions put to him and his answers were adequate to ensure a fair trial." This is not the specific allegation of misunderstanding that Lim and Yee Soon Shin require. See also United States v. Tapia, 631 F.2d 1207, 1209 (5th Cir.1980) (defendant must personally waive right to continuous translation, but if, on remand, district court found that interpreter was actually available to defendant and sitting next to him then no waiver was necessary).
 
 
 6
 Lee relies on a series of cases in which interpreters filtered or summarized the defendant's testimony. See United States v. Gomez, 908 F.2d 809, 811 (11th Cir.1990), cert. denied, 111 S.Ct. 699 (1991) (translator inappropriately summarized defendant's testimony); United States v. Torres, 793 F.2d 436, 439-40 (1st Cir.) (order by district judge to interpreter that interpreter filter out statements made by pro se defendant in course of defendant's cross-examination of a witness), cert. denied, 479 U.S. 889 (1986); United States v. Anguloa, 598 F.2d 1182, 1184-86 (9th Cir.1979) (discussing problems of mistranslation, government's ex parte substitution of new interpreter, and interpreter's disparaging comments about defendant). Because Lee does not argue that the translator filtered or summarized Lee's testimony, these cases are irrelevant.
 
 
 7
 Since Lee failed to object at trial, had an interpreter available at all times, and fails to assert specific instances of prejudice resulting from the translation procedure employed by the district court, the translation procedure employed here did not constitute an abuse of discretion.
 
 II
 
 8
 Lee argues that the Paperwork Reduction Act (PRA), 44 U.S.C. §§ 3501-3520, prohibits the government from imposing any penalty upon him for providing false information to the INS because the Form N-400 Lee signed did not bear a valid Office of Management and Budget (OMB) control number. Lee relies on the public protection section of the PRA:
 
 
 9
 Notwithstanding any other provision of law, no person shall be subject to any penalty for failing to maintain or provide information to any agency if the information collection request involved was made after December 31, 1981, and does not display a current control number assigned by the Director, or fails to state that such request is not subject to this chapter.
 
 
 10
 44 U.S.C. § 3512.
 
 
 11
 * The government argues that Lee waived his PRA argument because he has raised it for the first time on appeal. In United States v. Hatch, 919 F.2d 1394, 1397-98 (9th Cir.1990), we held, however, that a successful PRA defense results in the conclusion that no offense has been charged. The defense can therefore be raised " 'at any time during the pendency of the proceedings.' " Id. at 1398 (quoting Fed.R.Crim.P. 12(b)(2)).[1]
 
 B
 
 12
 Turning to the merits, we note that we have reversed convictions based upon complete failures to supply information when information requests did not include valid OMB control numbers. E.g., Hatch, 919 F.2d at 1395, 1398; United States v. Smith, 866 F.2d 1092, 1098-99 (9th Cir.1989). Being penalized for submitting fraudulent statements is different, however, than merely failing to supply any information at all. The Second Circuit held in United States v. Weiss, 914 F.2d 1514 (2d Cir.1990), cert. denied, 111 S.Ct. 2888 (1991), that deliberate, fraudulent misstatements are not shielded by the PRA. Accord United States v. Collins, 920 F.2d 619, 630 n. 13 (10th Cir.1990) (dicta), cert. denied, 111 S.Ct. 2022 (1991); United States v. Matsumoto, 756 F.Supp. 1361, 1364 (D.Haw.1991). "The gravamen of the crimes for which [Lee was] convicted ... was not 'failing to ... provide information,' but knowingly providing false information." Weiss, 914 F.2d at 1521 (quoting 44 U.S.C. § 3512) (alteration in original); see also Matsumoto, 756 F.Supp. at 1364. We agree with those courts that have considered the issue that Congress did not intend for the PRA to shield fraudulent misstatements, such as those made by Lee, from criminal prosecution.
 
 III
 
 13
 Lee next argues that he was impermissibly sentenced for two convictions arising out of the same conduct: knowingly making a false statement in a naturalization proceeding in violation of 18 U.S.C. § 1015(a)[2] and falsely procuring naturalization in violation of 18 U.S.C. § 1425.[3] We review the legality of a criminal sentence de novo. United States v. Sanchez-Vargas, 878 F.2d 1163, 1166 (9th Cir.1989).
 
 
 14
 Because double punishments may raise constitutional questions, we first examine whether Congress intended to authorize double punishments. Simpson v. United States, 435 U.S. 6, 11-12 (1978); Sanchez-Vargas, 878 F.2d at 1168. The origins of sections 1015 and 1425 provide little guidance. The substantive predecessor of section 1425 was enacted in 1906. See Act of June 29, 1906, Pub.L. No. 338, ch. 3592, § 23, 35 Stat. 596, 603. The substance of section 1015 was first enacted in 1909. See Act of Mar. 4, 1909, Pub.L. No. 350, ch. 321, § 79, 37 Stat. 1088, 1103. In 1940, both offenses were consolidated into subparts of a single statute. See Nationality Act of 1940, Pub.L. No. 853, ch. 876, § 346, 54 Stat. 1137. Under the 1940 Act, the substance of both offenses was contained in various subsections of section 346(a) of the Nationality Act. A single penalty provision, section 346(d), applied to any violation of section 346(a). Finally, in 1948, the offenses were re-enacted in separate sections and have remained unchanged to this day. See Act of June 25, 1948, Pub.L. No. 772, ch. 645, §§ 1015 and 1425, 62 Stat. 683, 752-53, 766-67. Neither party has cited to any legislative history indicating that Congress intended, or did not intend, by the 1948 amendment to inflict multiple punishments. The sequence of amendments appear to reflect concerns over organization of the code rather than substantive changes.
 
 
 15
 Indeed, since Congress once collapsed the two offenses into a statute with a single penalty provision, it appears that Congress did not affirmatively intend to punish someone following Lee's sequence of behavior (lying on the petition and going through with naturalization) to be doubly punished. It seems the substantive evil that Congress was addressing with both offenses was simply fraud in naturalization proceedings. It drafted both sections to ensure that all types of fraud in procuring naturalization would be covered. See Prince v. United States, 352 U.S. 322, 327-28 (1957) (creation of crime of entering bank with intent to commit felony not intended to add additional punishment to one convicted of actually committing the bank robbery); Sanchez-Vargas, 878 F.2d at 1169-70 ("Congressional efforts to generally broaden the scope of [a particular offense do] not, however, lead to the conclusion that Congress necessarily intended thereby to impose multiple penalties for multiple violations of its terms.").
 
 
 16
 It thus appears to us that Congress did not intend to inflict multiple punishments on Lee. Moreover, the rule of lenity and the doctrine of avoiding constitutional questions require us to construe ambiguous expressions of Congressional intent against multiple punishments. Simpson, 435 U.S. at 12 (avoiding constitutional questions); id. at 14-15 (rule of lenity). We therefore hold that the district court erred by entering two convictions against Lee for the same conduct. Accordingly, we vacate both convictions and remand to the district court to enter a conviction on one count. Ball v. United States, 470 U.S. 856, 865 (1985); Sanchez-Vargas, 878 F.2d at 1172.
 
 
 17
 VACATED AND REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Both parties misapprehend Navel Orange Administrative Committee v. Exeter Orange Co., 722 F.2d 449 (9th Cir.1983), which held that a defendant in an administrative enforcement proceeding could not raise PRA as an affirmative defense. In Navel Orange, we held that this court, hearing an enforcement matter, had no jurisdiction to hear an affirmative defense based on PRA because the defendant had not exhausted its administrative remedies on the PRA question as required by statute. See id. at 453-54
 
 
 [2]
 Section 1015(a) provides:
 Whoever knowingly makes any false statement under oath, in any case, proceeding, or matter relating to, or under, or by virtue of any law of the United States relating to naturalization, citizenship, or registry of aliens [s]hall be fined not more than $5,000 or imprisoned not more than five years, or both.
 
 
 [3]
 Section 1425 provides:
 (a) Whoever knowingly procures or attempts to procure, contrary to law, the naturalization of any person, or documentary or other evidence of naturalization or of citizenship; or
 (b) Whoever, whether for himself or another person not entitled thereto, knowingly issues, procures or obtains or applies for or otherwise attempts to procure or obtain naturalization, or citizenship, or a declaration of intention to become a citizen, or a certificate of arrival or any certificate or evidence of naturalization or citizenship, documentary or otherwise, or duplicates or copies of any of the foregoing--
 Shall be fined not more than $5,000 or imprisoned not more than five years, or both.