William J. RASMUSSEN, etc., Plaintiff-Appellant,

v.

Clifford HARDIN, Secretary of Agriculture of the United States, Defendant-Appellee.

Marlene L. KRESSE et al., Plaintiff-Appellants,

v.

Clifford HARDIN, Secretary of Agriculture of the United States, Defendant-Appellee.

Nos. 25668, 25669.

United States Court of Appeals, Ninth Circuit.

March 29, 1972.

---

John B. Carroll (argued), of Nottingham, Carroll, Paltz, Coughlin & Conan, Syracuse, N. Y., Stockton & Hing, Hill & Savoy, Phoenix, Ariz., for appellants.

William D. Appler (argued), Alan S. Rosenthal, William D. Ruckelshaus, Asst. Atty. Gen., Washington, D. C., Richard K. Burke, U. S. Atty., Richard C. Gormley, Asst. U. S. Atty., Phoenix, Ariz., for appellee.

Before MADDEN, Judge, United States Court of Claims *, BROWNING and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge:

These are appeals by the plaintiffs from orders dismissing two actions challenging the validity of certain provisions of a milk marketing order promulgated by the defendant Secretary of Agriculture. We affirm in both cases.

### 1. Nature of the cases.

The complaints are identical in the two cases except for the parties plaintiff. In No. 25,668 the plaintiff Rasmussen is a milk producer and handler who also makes and sells a milk product called "Go." In No. 25,669, the plaintiffs Kresse, et al., are consumers of "Go," and all but two of them are members of Concerned Consumers, an unincorporated association.

The complaints assert a common law right to be free from unlawful regulation by the Secretary. They also alleged that the Secretary violated the appellants' Fifth Amendment right to due process by holding hearings concerning the milk order in a location some 1,500

miles from appellants' residence. Finally, they allege that by attempting to regulate the milk product marketed by Rasmussen, the Secretary exceeded his statutory authority and imposed an unlawful burden on consumers.

The cases arise from orders issued by the Secretary under the Agricultural Marketing Agreement Act, 7 U.S.C. § 601 ff., and particularly § 608c. Rasmussen is an operator of a dairy in the central Arizona marketing area. As a producer-handler, handling milk produced by him, he has been exempt from the pooling and pricing provisions of the Secretary's marketing order for the area, 7 C.F.R. § 1131.11. In 1965, he began to make and market "Go" from powdered skim milk and other ingredients, which he brought to Arizona from outside the state. All that he adds that is not so imported is local water. He sold "Go" in competition with fresh milk, and at a lower price. By 1969 about 17.1% of his milk distribution was "Go".

Since 1964, marketing orders have required that a regulated handler who buys milk powder and converts it into fluid skim milk must account for it at the higher Class I price (29 F.R. 9002). In 1964, the Secretary held national hearings on the question of requiring handlers who reconstitute dry milk powder into skim milk drinks, including drinks which had various substances added to flavor or fortify them, to account for the milk powder at Class I rather than surplus prices. 29 F.R. 9002, 9010. The Secretary concluded they should, and the marketing orders, including the Central Arizona Order, were amended to reflect this. 29 F.R. 9284. However, Rasmussen as a producer-handler was not affected.

On December 14, 1966, and thereafter, the Secretary gave notice of public hearings to consider proposed amendments to the Central Arizona Marketing Order,

* The Honorable J. Warren Madden, Judge, United States Court of Claims. Judge Madden participated in the hearing of these cases, but died before this opinion was prepared.

including proposals to classify filled milk under the order and to review the producer-handler definition. See 31 F.R. 16227; 32 F.R. 140; 32 F.R. 415. The public hearing was held in Phoenix, Arizona, on February 7–10, 1967, and interested parties, including Rasmussen, appeared, presented evidence, and filed briefs. On October 9, 1967, a Recommended Decision was issued. 32 F.R. 14232. The decision concluded that (1) filled milks should be priced as Class I products, and (2) producer-handlers should not be exempted if they use milk powder not of their own production to manufacture filled milk. 32 F.R. 14233. Exceptions to this Recommended Decision were filed by Rasmussen and others.

Subsequently, the Secretary, following a series of public meetings determined to hold national hearings on the question of "how filled milk should be classified and priced" under all Federal milk orders. 34 F.R. 16881. This national hearing, held at Memphis, Tennessee in 1968, reopened prior hearings on thirteen orders including that for Central Arizona. Rasmussen appeared at these hearings, but rather than present any evidence additional to what he had already presented at Phoenix, objected to the location of the national hearings and moved to adjourn or dismiss them. The requests were denied, and Rasmussen took no further action except to file exceptions to the Recommended Decision that followed the hearings. The Secretary then issued a Final Decision applicable to all marketing orders (34 F.R. 16881), and a Final Decision incorporating its findings and conclusions and the same terms for Central Arizona. 34 F.R. 16548.

In the Final Decision the Secretary concluded that the skim milk component of filled milk, whether obtained from fluid skim milk or reconstituted dry milk powder, should be priced and pooled as a Class I product. 34 F.R. 16882–83. The Final Decision also provided that if a producer-handler reconstitutes nonfat powder into a fluid milk product, he loses the privilege of exemption provided to producer-handlers like Rasmussen.

Title 7 U.S.C. § 608c(15) provides for administrative and judicial review. Subsection (A) provides that "[a]ny handler subject to an order may file a written petition with the Secretary of Agriculture, stating that any such order . . . is not in accordance with law and praying for a modification thereof or to be exempted therefrom." It requires that the handler be given an opportunity for a hearing. After the hearing, the Secretary "shall make a ruling upon the prayer of such petition which shall be final, if in accordance with law." Subsection (B) provides that "[t]he District Courts of the United States in any district in which such handler is an inhabitant . . . are vested with jurisdiction in equity to review such ruling, provided a bill in equity for that purpose is filed within twenty days from the date of entry of such ruling." Rasmussen chose not to file a petition pursuant to section 608c(15)(A), but instead filed the present action in the district court.

2. *Failure to exhaust administrative remedy—Rasmussen's appeal No. 25,668.*

■ The trial judge dismissed Rasmussen's case for failure to exhaust his administrative remedy. This was correct. The principles of United States v. Ruzicka, 1946, 329 U.S. 287, 67 S.Ct. 207, 91 L.Ed. 290, are controlling. *Ruzicka* arose in the context of an enforcement action under Section 608a, but its principles apply with equal force to Rasmussen's present suit. In *Ruzicka*, the Supreme Court was concerned with the distribution of authority between the courts and the Secretary. The Court first noted that the "procedure devised by Congress explicitly [gives] to an aggrieved handler an appropriate opportunity for the correction of errors or abuses by the agency charged with the intricate business of milk control." Id. at 292, 67 S.Ct. at 209. The Court also indicated that this administrative remedy should be employed even though the

matter to be reviewed was essentially a legal or constitutional question:

"... whether ... an order is or is not in accordance with law is not a question that brings its own immediate answer, or even an answer which it is the familiar, everyday business of courts to find. Congress has provided a special procedure for ascertaining whether ... an order is or is not in accordance with law. The questions are not, or may not be, abstract questions of law. *Even when they are formulated in constitutional terms, they are questions of law arising out of, or entwined with, factors that call for understanding of the milk industry. And so Congress has provided that the remedy in the first instance must be sought from the Secretary of Agriculture.*" *Id.* at 294, 67 S.Ct. at 210 (Emphasis added.)

We have followed *Ruzicka.* Panno v. United States, 9 Cir., 1953, 203 F.2d 504; *see also* La Verne Co-op. Citrus Ass'n v. United States, 9 Cir., 1944, 143 F.2d 415.

Stark v. Wickard, 1944, 321 U.S. 288, 64 S.Ct. 559, 88 L.Ed. 733, on which Rasmussen relies, is not in point. There, the party regulated by the order was a producer, for whom Congress had failed to provide an administrative remedy. In upholding judicial review, the Court relied on the fact that the statute created "definite personal rights" in producers. (321 U.S. at 309, 64 S.Ct. 559.) Gardner v. Toilet Goods Ass'n, Inc., 1967, 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704, is also not in point. The statute there involved did not provide for an administrative remedy to attack the regulation involved. In Abbot Laboratories v. Gardner, 1967, 387 U.S. 136, 141–6, 87 S.Ct. 1507, 18 L.Ed.2d 681, decided the same day as *Gardner,* the Court based much of its analysis on language in 21 U.S.C. § 371(f) (6), which provides:

"The remedies provided for in this subsection shall be in addition to and not in substitution for any other remedies provided by law."

Rasmussen argues that 7 U.S.C. § 608a(8) contains similar language, and thereby provides the statutory basis for the present action. Section 608a(8) states:

"The remedies provided for in this section shall be in addition to, and not exclusive of, any of the remedies or penalties provided for elsewhere in this chapter or now or hereafter existing at law or in equity."

However, as the Court held in *Ruzicka, supra,* 329 U.S. 291, n.2, 67 S.Ct. 207, this language, in context, refers only to the government's remedies, not to Rasmussen's.

Finally, Rasmussen argues that the Supreme Court's interpretation of 7 U. S.C. 608c(5) (G) prohibits the milk order promulgated by the Secretary here. See Lehigh Valley Cooperative Farmers, Inc. v. United States, 1962, 370 U.S. 76, 82 S.Ct. 1168, 8 L.Ed.2d 345. The case does not help Rasmussen. The plaintiff there had exhausted his remedy under § 608c(15); Rasmussen has not.

3. *Standing—the Kresse appeal, No. 25,669.*

The appellants in No. 25,669 admittedly have no administrative remedy under Section 608c(15) (A). They argue that the district court erred in dismissing their action for lack of standing to sue. Their primary reliance is on two Supreme Court cases which came down after the district court decided this case: Association of Data Processing Service Organizations, Inc. v. Camp, 1970, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184; Barlow v. Collins, 1970, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192. In finding standing to sue in those cases, the Court devised a three-part test: The plaintiffs had standing to sue because (1) the challenged action caused them injury in fact; (2) the interest they sought to protect was within the zone of interests to be protected or regulated by the statute in question; and (3) the statute did not prohibit judicial review. Appellants argue that the application of these criteria to the present case requires reversal.

We think not. We do not decide whether appellants fall within the first and second criteria, because they do not meet the third. In *Barlow* the Supreme Court established that judicial review is the rule and non-reviewability the exception. 397 U.S. at 166. But in *Data Processing* the Court also indicated that Congress could decide the question one way or the other. 397 U.S. at 154. In neither *Data Processing* nor *Barlow* did the statutes involved contain any reference to the question of judicial review. See 12 U.S.C. §§ 21 et seq.; 12 U.S.C. §§ 1261 et seq.; 7 U.S.C. § 1444(d) (1964, ed., Supp. IV); 16 U.S.C. § 590h (g). Here, however, Section 608c(15) (B) limits judicial review to handlers. We hold that Congress has resolved the question of standing.

It is true that § 608c(15) does not expressly say that persons other than handlers, and particularly consumers, shall not be entitled to judicial review. That, however, is not necessary. As the Court said in Barlow, "[t]he question then becomes whether nonreviewability can fairly be inferred. . . . A clear command of the statute will preclude review; and such a command of the statute may be inferred from its purpose." (397 U.S. at 166–67, 90 S.Ct. at 837–838) Here we find "clear and convincing evidence" (*id.*) of such a command.

The statute before us does more than provide for administrative and judicial review and name the affected class entitled to seek it. Section 608a(6) provides for enforcement of the Secretary's orders. And Section 608c(15) (B) provides that pendency of administrative or judicial review under that section "shall not impede, hinder, or delay the United States or the Secretary . . . from obtaining relief pursuant to section 608a(6) . . . ." It was this language that led the Court to hold, in *Ruzicka,* that grounds for attacking an order under § 608c(15) could not be raised in a § 608a(6) proceeding. The rationale that we have quoted from *Ruzicka* points strongly to the conclusion that Congress did not intend that persons like appellants, who are affected by the order only if they choose to buy "Go," and then only in that they must pay a higher price for it, should have standing to seek review.

Nor can it be said that Congress overlooked consumers, and that therefore it did not intend to exclude them from obtaining administrative and judicial review of the Secretary's orders. The Act contains some pious platitudes about the interests of consumers. See §§ 602(2) (3) (4), 608a(1). The primary purpose of the Act, however, is to protect the purchasing power of the farmers and the value of agricultural assets. (§ 601.) The whole scheme of the Act is to raise the prices of agricultural products to, and keep them at, levels fixed by the Secretary, and to establish "orderly" marketing of them. Bluntly stated, that means, in part, marketing freed to a very large extent from price competition. It is arguable that the immediate, and possibly the long-run, interests of consumers are contrary to these goals. It is not surprising that the Act is full of provisions for agreements between the Secretary and producers (§ 608(2), 608a(3)) or growers (§ 608a(3)), processors (§ 608b) and handlers (§ 608b), agreements which are exempt from the antitrust laws (§ 608b); for votes by producers (§ 608c(8) (A), (9) (B), (12), (16) (B), (19)), and processors, (§ 608c(19)); for the regulation of processors, associations of producers, and other handlers (§ 608c(1)); and for loans, quotas, etc. There are provisions for hearings (§§ 608(5), 608c(3)). But it is very clear that the whole structure of the Act contemplates a cooperative venture between the Secretary, the producers, and handlers. Nowhere in the Act can we find an express provision for participation by consumers in any proceeding. We are convinced that this is no accident.

To grant consumers standing would be to say that, while Congress regarded it as imperative that a challenge by a *handler* who is directly regulated by a marketing order, first be considered by the

Secretary, it was nevertheless the legislative judgment that if advanced by consumers, the same challenge did not require initial scrutiny by the administrative body. There is no basis for attributing to Congress the intent to draw such a distinction. Had Congress intended to allow consumers to attack provisions of a marketing order, it would have required them to pursue the administrative remedy provided in Section 608c(15) (A). By limiting the administrative remedy to handlers, Congress necessarily intended that the judicial remedy be similarly limited in scope.

Furthermore, giving appellants standing to sue would provide a handler with a convenient device for evading the statutory requirement that he first exhaust his administrative remedies. A handler need only find a consumer who is willing to join in or lend his name to an action in the district court, raising precisely the same exceptions that the handler must raise administratively. The identity of the complaints and of counsel for all appellants in these cases points up the possibility. We are not unsympathetic to the plight of the consumer appellants, but we think that if they are to have a remedy, Congress must supply it.

None of the additional cases cited by appellants requires that they be granted standing to sue. In *Stark, supra,* the Supreme Court did hold that a producer had standing to sue when he was claiming that moneys belonging to him were being improperly diverted to others. But the courts have followed *Stark* only in identical situations. *See* Zuber v. Allen, 1969, 396 U.S. 168, 90 S.Ct. 314, 24 L.Ed.2d 345; Blair v. Freeman, 1966, 125 U.S.App.D.C. 207, 370 F.2d 229. And no court has suggested that consumers should be granted standing on the basis of *Stark* in such cases as this.

Nor do Harry H. Price & Sons, Inc. v. Hardin, 5 Cir., 1970, 425 F.2d 1137, cert. denied, 400 U.S. 1009, 91 S.Ct. 568, 27 L.Ed.2d 622, or Walter Holm & Co. v. Hardin, D.C.Cir., 1971, 449 F.2d 1009, require a contrary result. There the courts held that the plaintiffs, who were a tomato repacker and tomato importer respectively, had standing to challenge an administrative order promulgated by the Secretary under Section 608c. In *Price & Sons, Inc.,* it is not suggested that the Fifth Circuit would extend its holding to consumers. Furthermore, the court, which relied on *Data Processing* to reach its result, omitted any discussion of the question of whether the statute prevented judicial review; apparently the question was not raised.

In *Walter Holm & Co.,* the order challenged had a much more direct impact on the plaintiff than the order challenged here has on appellants. The plaintiff in *Walter Holm & Co.,* was an importer of Mexican tomatoes, and attacked the Secretary's regulation limiting the size of such tomatoes. In holding that the plaintiff had standing to sue the court explicitly noted that although the appellant was not among the domestic handlers directly governed by the Secretary's order, he was nevertheless directly affected since the law, as administered by the Secretary, resulted in automatic import restrictions of the same nature being applied to the operations of importers. 449 F.2d at 1011. No such immediate link exists in the present case between the Secretary's order and the consumer appellants. Moreover, as in *Price & Sons, Inc.,* there is no discussion of whether the statute prevented judicial review; apparently the question was not raised.

Affirmed.