UNITED STATES of America,
Plaintiff–Appellee,

v.

RIVERBEND FARMS, INC.,
Defendant–Appellant.

No. 87–2326.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 13, 1988.

Decided May 24, 1988.

---

Thomas E. Campagne and Brian C. Leighton, The Law Firm of Thomas E. Campagne, Fresno, Cal., for defendant-appellant.

R. Steven Lapham, Asst. U.S. Atty., Sacramento, Cal., for plaintiff-appellee.

Before CHOY, SNEED and HUG, Circuit Judges.

CHOY, Circuit Judge:

## OVERVIEW

Riverbend Farms, Inc. ("Riverbend") appeals from the decision of the district court ordering civil forefeiture pursuant to 7 U.S.C. § 608a(5). Riverbend argues that: 1) Title 7 U.S.C. § 608a(7) requires the Secretary of Agriculture ("Secretary") to conduct an administrative hearing prior to commencement of a forfeiture proceeding; 2) it is immune from penalties for overshipments that occurred while it had an administrative petition pending; 3) civil forfeiture under 7 U.S.C. § 608a(5) is sufficiently criminal in nature to implicate due process rights; 4) the district court erred in refusing to allow it to raise affirmative defenses to the forfeiture action; and 5) the district court erred in refusing to allow evidence that the administrative remedy is inadequate. We affirm.

## FACTS

The essential facts are not in dispute. The Agricultural Adjustment Act ("Act") is intended to "establish and maintain ... orderly marketing conditions for agricultural commodities in interstate commerce." 7 U.S.C. § 602(1). Under the Lemon Marketing Order, 7 C.F.R. §§ 910.50–910.56, the Secretary sets limits on the quantity of lemons shipped by individual handlers. During a one week period in April of 1982, Riverbend overshipped its allotment by 605 cartons. The parties stipulated at trial that the overshipment was inadvertent.

On June 1, 1983, the United States filed a complaint pursuant to 7 U.S.C. § 608a(5) for civil forfeiture in the amount of $5,469.20.[1] On October 3, 1983, Riverbend filed a motion to dismiss or for summary judgment, alleging that it was immune from forfeiture on the basis of 7 U.S.C. § 608c(14), which states that "no penalty shall be imposed under this subsection" for violations that occur between the date an administrative petition under § 608c(15)(A)

---

1. Title 7 U.S.C. § 608a(5) states that:
   [a]ny person exceeding any ... allotment ... shall forfeit to the United States a sum equal to the value of such excess at the current market price for such commodity at the time of the violation, which forfeiture shall be recoverable in a civil suit brought in the name of the United States.

is filed and the date of the Secretary's ruling on that petition.

On January 24, 1985, the court denied the motion to dismiss. The court held that § 608c(14) provides immunity only from criminal penalties during the pendency of an administrative petition. Further, the court held that *United States v. Ruzicka*, 329 U.S. 287, 67 S.Ct. 207, 91 L.Ed. 290 (1946), precluded the assertion of affirmative defenses in the government's civil forfeiture action, other than the defense that the government counted incorrectly in the overshipment determination.

On May 18, 1987, the district court issued its findings of fact and conclusions of law. The court found in favor of the Government and ordered Riverbend to pay $5,469.20 (605 carton overshipment at $9.04 per carton) plus interest from April 24, 1982. On June 10, 1987, the court ordered a stay of the judgment pending appeal. Riverbend timely appeals.

## ANALYSIS

### I. *Administrative Hearing Under 7 U.S.C. § 608a(7)*

█ Riverbend argues that 7 U.S.C. § 608a(7) requires the Secretary to conduct a fact-finding hearing prior to commencement of a forfeiture action. We affirm the district court's conclusion that the statute requires no such hearing.

Section 608a(7) states that "the Secretary shall have the power to institute an investigation and, after due notice to such handler, to conduct a hearing in order to determine the facts for the purpose of referring the matter to the Attorney General for appropriate action." Riverbend asserts that although the statute is phrased permissibly, it should be interpreted as mandatory. First, Riverbend argues that it would be illogical to interpret § 608a(7) as permissive because the Secretary is already granted the authority to conduct a hearing under § 610(h). Further, it argues that

Congress could not have intended to require "due notice" to the alleged violator for a hearing that is optional in the first instance.

This argument need not detain us. Statutory construction properly begins with an analysis of the statutory language itself, and, unless ambiguous, properly ends there. *See Russello v. United States*, 464 U.S. 16, 20, 104 S.Ct. 296, 299, 78 L.Ed.2d 17 (1983); *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed. 2d 246 (1981). Unambiguous language is conclusive unless Congress clearly expresses a contrary intent. *See id.*

The language of § 608a(7) is unambiguously permissive. Congress easily could have mandated a hearing, but instead stated that the Secretary "shall have the power" to conduct such investigations. Riverbend points to no clear legislative intent to the contrary.[2]

### II. *Immunity During the Pendency of an Administrative Petition*

Riverbend argues that it is immune from civil forfeiture because at the time of the overshipment it was prosecuting an administrative petition pursuant to 7 U.S.C. § 608c(15)(A). Section 608c(15)(A) grants handlers the authority to challenge or seek modification of any order or obligation under the Act. Section 608c(14) authorizes criminal fines for violations of any order, provided that if the handler filed and is diligently prosecuting a petition under § 608c(15)(A), "no penalty shall be imposed under this subsection for such violations as occurred between the date upon which the defendant's petition was filed with the Secretary, and the date upon which notice of the Secretary's ruling thereon was given to the defendant."

█ Riverbend contends that the immunity provided by § 608c(14) extends to civil forfeiture actions. We disagree, and af-

---

2. The only court to have addressed the question reached the same conclusion. In *United States v. Hinman Farms Products,* 156 F.Supp. 607 (N.D.N.Y.1957), the court held that a hearing was neither mandatory nor a condition prece-

dent to the commencement of an action. *Id.* at 610. Instead, the court construed § 608a(7) to authorize a hearing when the cooperation of the handler was necessary to determine the relevant facts. *Id.*

firm the district court's denial of immunity.[3]

### A. *The Specific Language of the Immunity Proviso*

Riverbend's position would require us to ignore the specific language of the immunity proviso itself. Section 608c(14) provides for criminal fines of up to $5000 per day of violation. However, the section also states that if the handler has filed a section 608c(15)(A) petition, "no penalty shall be imposed *under this subsection*" for violations that occur during the pendency of the petition (emphasis added). Thus, by its own terms, the immunity applies only to sanctions imposed under § 608c(14), and not those under § 608a(5). Further, the legislative history of § 608c(14) indicates that Congress specifically limited the breadth of the immunity to that subsection. The original House Bill stated that "no person shall be convicted under this title" for violations during the pendency of the petition. H.R.Rep. No. 8492, 74th Cong., 1st Sess. 22 (1935). The proviso was changed in the Senate to "no penalty shall be imposed under this subsection." While the change from "conviction" to "penalty" supports Riverbend's broader interpretation, the simultaneous change from "under this *title*" to "under this *subsection*" negates that inference and indicates that Congress was conscious of the specific language it adopted.

### B. *The Interaction Between § 608c(15)(A) and § 608a(6)*

Riverbend nonetheless argues that the specific language of the immunity provision is inconsistent with the overall enforcement scheme and its legislative history. Section 608c(15)(B) states that the pendency of an administrative petition "shall not impede, hinder, or delay the United States ... from obtaining relief pursuant to section 608a(6)." Section 608a(6) vests district courts with jurisdiction "to enforce, and to prevent and restrain any person from violating any order." Riverbend argues that because § 608c(15)(B) specifically grants the authority to enjoin violations through § 608a(6) despite the pendency of an exemptive petition, but is silent with respect to forfeiture under § 608a(5), the logical conclusion is that Congress intended injunctive relief to be the sole remedy available to the government while a petition is pending.

Riverbend further asserts that the legislative history supports this interpretation. The Senate Report states that while a petition is pending, "the penalties imposed by the *act* for violation of an order cannot be imposed[,]" but the government may "proceed to obtain an injunction ... pursuant to section 8a(6)." S.Rep. No. 1011, 74th Cong., 1st Sess. 14 (1935) (emphasis added). Riverbend argues that the exemption from penalties imposed by the "act" means the entire Agricultural Adjustment Act, and that the specific reference to the availability of injunctive relief suggests that Congress intended such to be the exclusive remedy while a petition is pending.

This analysis is not compelling. As Riverbend correctly notes, § 608c(15)(B) grants the government the authority to obtain relief pursuant to § 608a(6) despite the pendency of a petition, but is silent as to § 608a(5) (the forfeiture provision). However, § 608a(6) grants the district court authority "to *enforce*, and to prevent and restrain any person from violating any order" (emphasis added). Thus, a forfeiture action under § 608a(5) is enforceable in the district court through the jurisdictional grant of § 608a(6). Completing the circle, the § 608c(15)(B) authority to obtain "relief" pursuant to § 608a(6) despite the pendency of a petition includes the right to "enforce" an order through civil forfeiture (i.e., through § 608a(5)).[4]

---

**3.** Alternatively, Riverbend argues that forfeiture under § 608a(5) is sufficiently criminal to implicate the § 608c(14) immunities. We similarly reject this argument. *See infra,* note 6.

**4.** Indeed, the House Bill version of § 608a(6) only granted the district court jurisdiction to "prevent and restrain" any person from violating an order. *See* H.R.Rep. No. 8861, 73d Cong., 2d Sess. 10 (1934). The Senate amended the bill to its present form, which includes jurisdiction "specifically to enforce, and to prevent and restrain" any person from violating any

Further, Riverbend refers to the legislative history out of context. As Riverbend notes, Senate Report No. 1011 states that "the penalties imposed by the act" cannot be levied while a petition is pending, though the Secretary may obtain an injunction. However, this language is included with and follows a discussion of the criminal penalties available under § 608c(14). Thus, the reference to immunity from "penalties imposed by the act," despite its potentially expansive meaning, logically refers to only those penalties enumerated in § 608c(14).

### C. *Immunity Under United States v. Ruzicka*

Riverbend asserts that in *United States v. Ruzicka*, 329 U.S. 287, 67 S.Ct. 207, 91 L.Ed. 290 (1946), the Supreme Court interpreted the statutory scheme as providing immunity from all penalties during the pendency of an administrative petition. As explained below, the Court in *Ruzicka* discussed the disruptive effect that the assertion of defenses would have on actions to force compliance with marketing orders. In a footnote, the Court quoted the legislative history stating that while a petition is pending, "the penalties imposed by the act for violation of an order cannot be imposed," but that injunctive relief is available pursuant to § 608a(6). *See* 329 U.S. at 294 n. 3, 67 S.Ct. at 210 n. 3. However, as explained above, this particular statement is susceptible to more than one meaning. A passing reference in a footnote to ambiguous legislative history in a case that did not involve the issue in question is not precedentially significant, particularly

when such dictum contradicts the statute's literal language.

### D. *Policy Arguments*

Finally, Riverbend argues that Congress could not have intended to immunize a handler from penalties for an intentional violation of an order, yet provide no similar immunity for an unintentional violation, especially since the amount of civil forfeiture could exceed the criminal fine. But if the pendency of an administrative petition conferred immunity from both civil forfeiture and criminal liability, a handler could violate the Act with impunity until the Government obtained an injunction.[5] Congress logically could have decided to immunize a handler from criminal penalties while preserving the Government's ability to otherwise obtain sanctions for violations of a marketing order.

### E. *Conclusion*

Section 608c(14) provides that "no penalties shall be imposed under this subsection" while an exemptive petition is pending. "This subsection" refers to the subsection on criminal sanctions. Congress has not clearly expressed a contrary legislative intent that requires us to disregard the literal language of the statute.[6] *See Turkette*, 452 U.S. at 580, 101 S.Ct. at 2527.

### III. *Is Forfeiture Under § 608a(5) Criminal or "Quasi–Criminal"?*

Riverbend also asserts that the Government's forfeiture action under § 608a(5) is criminal in nature, thus impli-

order. The Senate Report notes that the purpose of the amendment was to "clarif[y] the jurisdictional powers of the district courts ... to enforce the provisions (as well as to prevent and restrain their violation) of this section and of any order." S.Rep. No. 733, 73d Cong., 2d Sess. 4 (1934).

5. Riverbend notes that Title 7 C.F.R. § 910.57 provides that if a handler overships, its next allotment can be reduced by the amount of the overshipment. However, the setoff is only permissible if the overshipment does not exceed 20% of the handler's allotment. *See id.* In this case, the overshipment of 605 cartons exceeded 20% of Riverbend's 2000 carton allotment.

Thus, the availability of a setoff does not refute the contention that a handler could file a petition and violate an order with impunity until the Government secures an injunction.

6. Riverbend's alternate suggestion that the criminal nature of civil forfeiture under § 608a(5) implicates the immunity under § 608c(14) during the pendency of an administrative petition fails for the same statutory reasons outlined above. That is, no matter how one labels the forfeiture action under § 608a(5), it is nonetheless not the proceeding to which the immunity in § 608c(14) applies (i.e., to penalties imposed under "this subsection").

cating its due process rights. Civil forfeiture statutes, although not sufficiently criminal to trigger the full array of constitutional protections, are nonetheless considered "quasi-criminal" and implicate certain constitutional rights. *See United States v. United States Coin & Currency*, 401 U.S. 715, 721–22, 91 S.Ct. 1041, 1044–45, 28 L.Ed.2d 434 (1971); *Boyd v. United States*, 116 U.S. 616, 634, 6 S.Ct. 524, 534, 29 L.Ed. 746 (1886); *United States v. One 1970 Pontiac GTO, 2–Door Hardtop*, 529 F.2d 65, 66 (9th Cir.1976). However, as we recently noted, the Supreme Court considers forfeiture statutes criminal "only for the purposes of the fourth amendment search and seizure clause and the fifth amendment self-incrimination clause." *United States v. Seifuddin*, 820 F.2d 1074, 1077 (9th Cir.1987) (citations omitted). "The Court has otherwise found that forfeiture statutes are civil for purposes of the double jeopardy clause and the broader range of constitutional protections applied to criminal trials." *Id.* (citations omitted). Riverbend raises no fourth amendment search and seizure or fifth amendment self-incrimination claim. Therefore, the characterization of civil forfeiture under § 608a(5) as "quasi-criminal" does not advance Riverbend's cause.

### IV. *Affirmative Defenses to Civil Forfeiture*

The district court held that under *Ruzicka*, Riverbend could not contest the forfeiture proceeding on the basis of defenses not administratively adjudicated under § 608c(15)(A).

Section 608c(15)(A) states that any handler subject to an order may petition the Secretary for modification of or exemption from that order. The parties stipulated that for two years prior to the filing of the complaint Riverbend had been diligently prosecuting a § 806c(15)(A) petition. However, § 608c(15)(B) states that the pendency of a modifying or exemptive petition "shall not impede, hinder, or delay the United States ... from obtaining relief pursuant to section 608a(6)." Section 608c(15)(B) further states that "[a]ny proceedings brought pursuant to section

608a(6) ... shall abate whenever a final decree has been rendered in proceedings between the same parties."

### A. *United States v. Ruzicka*

In *Ruzicka*, the Court interpreted these provisions to bar a handler from raising defenses in an enforcement proceeding that it could have raised in an administrative petition. The Government brought an action under § 608a(6) for a mandatory injunction to force payment into a milk-producer fund created by the Secretary. The handlers justified their failure to pay on the ground that the Secretary had assessed the deficiencies on the basis of faulty inspections and improper tests. 329 U.S. at 289, 67 S.Ct. at 208. The district court held that " 'the defendants having failed to avail themselves of the administrative remedy provided by said Act, may not raise such issues of fact before this court,' " and the seventh circuit reversed. *Id.* at 289–90, 67 S.Ct. at 208. The Supreme Court noted that § 608c(15)(A), which authorizes administrative relief, also specifically states that the pendency of such proceedings shall not impede the United States from obtaining relief under § 608a(6). The Court reasoned as follows:

> The procedure devised by Congress explicitly gave to an aggrieved handler an appropriate opportunity for the correction of errors or abuses by the agency charged with the intricate business of milk control. In addition, if the Secretary fails to make amends called for by law the handler may challenge the legality of the Secretary's ruling in court.

*Ruzicka*, 329 U.S. at 292, 67 S.Ct. at 209. The Court concluded that the statute should not be interpreted to grant "the right to consider independently, in a proceeding by the Government for the enforcement of the Secretary's order, questions for which Congress explicitly furnished the handler an expert forum for contest with ultimate review by a district court." *Id.* Of further significance to the present action, the Court stated that even constitutional challenges should be raised, in the

first instance, in the administrative process. *Id.* at 294, 67 S.Ct. at 210.

### B. *Application of Ruzicka to Civil Forfeiture*

Riverbend argues that *Ruzicka* is limited to those instances in which the Government seeks injunctive relief. As Riverbend notes, the Court supported its conclusion by emphasizing that protracted litigation over individual contributions to the fund could disrupt the entire industry. *Id.* at 293–94. By contrast, Riverbend argues that permitting the assertion of affirmative defenses to a civil forfeiture action would in no way threaten the entire industry.

■ We find Riverbend's narrow interpretation of *Ruzicka* unpersuasive. The structure of the *Ruzicka* opinion indicates that the Court reached its conclusion, and then described why that conclusion was logical in the compliance action before it. *See* 329 U.S. 292–94, 67 S.Ct. at 209–10. Further, the Court's discussion of the interaction between § 608a(6) and § 608c(15) is not couched solely in terms of injunctive relief.

Subsequent decisions of this court have interpreted *Ruzicka* in a manner that renders it applicable to the present action. In *Panno v. United States*, 203 F.2d 504, 508–09 (9th Cir.1953), we stated that it would "frustrate all of the objectives of the Act if recalcitrant handlers could compel the government to canvass such questions in respect to every sale in a prosecution [under the Act]." In *Rasmussen v. Hardin*, 461 F.2d 595, 597 (9th Cir.), *cert. denied*, 409 U.S. 933, 93 S.Ct. 230, 34 L.Ed.2d 188 (1972), we described *Ruzicka* as "concerned with the distribution of authority between the courts and the Secretary." Finally, in *Navel Orange Administrative Committee v. Exeter Orange Co.*, 722 F.2d 449, 453–54 (9th Cir.1983), we held that "a defendant in an enforcement action cannot raise affirmative defenses which have not

first been finally determined in a § 608c(15)(A) administrative proceeding."

*Exeter*, like *Ruzicka*, involved an action to compel payment of assessments pursuant to a marketing order. As in the present case, the handlers had filed an administrative petition contesting the order prior to institution of an enforcement proceeding. We reiterated that "[p]ending resolution of the administrative proceeding, [the handler] must comply with the marketing orders." *Id.* at 452. If the Secretary or courts (upon proper appeal) substantiated the challenge, the handler would be entitled to a refund. *Id.* Therefore, the only questions properly before the court were whether petitioners were handlers and whether they had complied with the marketing orders. *Id.* at 453.

We see no reason to differentiate between actions to force compliance with marketing orders and actions "penalizing" handlers who fail to comply with those orders. The concern over the balance of authority between the courts and the Secretary is equally implicated in a forfeiture action. Further, both the mandatory injunction action in *Ruzicka* (and subsequent cases) and the forfeiture action here involve the payment of money by a party challenging its obligation to do so.

We are satisfied that the district court, upon proper application, can shape relief to protect the handler's rights in case any challenge to the marketing order is ultimately substantiated.[7] Indeed, as discussed more fully below, if it is clear that the forfeiture proceeding may conclude prior to the administrative adjudication of the affirmative defenses, the handler may seek relief through a mandamus petition directed at compelling resolution of the administrative proceeding, especially if the latter is unduly delayed. We thus reject Riverbend's suggestion that we create two different paths of administrative procedure, the application of which depends upon the nature of the enforcement action brought.

---

7. In *Exeter*, we were satisfied that the ability to refund improper assessments sufficiently protected the aggrieved handler. *See* 722 F.2d at 452. While it is not clear that a mechanism for the refund of an improperly assessed forfeiture exists, the district court could exercise its equitable powers to stay distribution of the damage award until completion of the administrative proceeding.

The decision of the district court barring the assertion of affirmative defenses is affirmed.

## V. *Ineffectiveness of the Administrative Remedy*

Riverbend's final argument is that the district court erred in failing to allow evidence that a § 608c(15)(A) petition provides no effective and meaningful avenue of review. The parties stipulated that for approximately two years prior to the filing of the complaint and thereafter Riverbend has diligently prosecuted a § 608c(15)(A) petition to modify or be exempted from the Lemon Marketing Order. Riverbend argues that the district court abused its discretion by not allowing evidence to demonstrate the inadequacy of the administrative remedy.

 While Riverbend is understandably frustrated by the delay that characterized its pursuit of administrative relief, it has failed to avail itself of the very remedies designed to facilitate the interaction between the courts and the Secretary. Initially, we note that the parties stipulated for trial and continued to assert up until oral argument before this court that Riverbend has been diligently pursuing an unresolved administrative petition. In fact, however, the Administrative Law Judge dismissed the petition in October of 1985. Riverbend neglected to appeal this dismissal. Thus, while the stipulation may have accurately described the facts at the time of the district court's order barring the assertion of affirmative defenses, the petition has been resolved, and Riverbend cannot reasonably assert before this court that it has continued to diligently pursue its administrative remedy.

Riverbend also failed to pursue other options to preserve its ability to present defenses prior to completion of the forfeiture action. Under the Administrative Procedure Act, the district court is authorized to "compel agency action unlawfully withheld or *unreasonably delayed.*" 5 U.S.C. § 706 (emphasis added); *see Sparks Nugget, Inc. v. Scott,* 583 F.Supp. 78, 85 (D.Nev.1984). Alternatively, we have suggested, although not decided, that despite the language of § 608c(15)(A), it may be within the inherent equitable powers of the district court to grant a stay of the execution of forfeiture pending resolution of the administrative petition. *See Exeter,* 722 F.2d at 452 (holding that because there was "no finding of unreasonable delay or bad faith such as to constitute denial of due process as required by 7 U.S.C. § 608c(15)(A)," the district court's refusal to stay the enforcement proceedings was not an abuse of discretion). Finally, the district court itself noted that it could, upon proper application, order forfeiture to be paid to the court pending resolution of the administrative petition.

We are cognizant of and concerned by the protracted process through which the Secretary ultimately dismissed Riverbend's petition. At some point a handler may convincingly demonstrate that the administrative process through which it must ultimately vindicate its rights has, for all practical purposes, ceased to perform its function.[8] Here, however, Riverbend's failure to exhaust its various administrative and judicial options prevents us from reaching this conclusion.

## CONCLUSION

The district court properly denied Riverbend's request for immunity during the pendency of its administrative petition and correctly barred the assertion of affirmative defenses to the Government's action for civil forfeiture. The district court's decision is AFFIRMED.

---

**8.** In *Smith v. Illinois Bell Telephone Co.,* 270 U.S. 587, 591–92, 46 S.Ct. 408, 409–10, 70 L.Ed. 747 (1926), the Court stated that a substantial period of administrative inactivity "evinces an entire lack of [an] appreciation of justice" and that the injured party "is not required indefinitely to await a decision" before seeking equitable relief in federal court.