SAULSBURY ORCHARDS AND ALMOND PROCESSING, INC., Plaintiff–Appellant,

v.

Clayton K. YEUTTER,* individually and as Secretary of Agriculture; John Block, individually and as former Secretary of Agriculture; the Almond Board of California, an administrative agency; Peggy Leong, individually and as Manager of the Almond Board of California; Pete Yamamoto; Roger Baccigalupi; Steve Easter; Walt Payne; Frank Clement; Sam Lewis, Col., Defendants–Appellees.

No. 87–2955.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 12, 1988.

Submission Withdrawn Dec. 15, 1988.

Resubmitted Aug. 22, 1989.

Decided Oct. 29, 1990.

---

* Clayton K. Yeutter is substituted for Richard Lyng, Secretary of Agriculture, pursuant to Fed. R.App.P. 43(c)(1).

Brian C. Leighton, Law Firm of Thomas E. Campagne, Fresno, Cal., for plaintiff-appellant.

John F. Daly, Dept. of Justice, Washington, D.C., for defendants-appellees.

Before FLETCHER, BEEZER and O'SCANNLAIN, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

Saulsbury Orchards, an almond handler, brought an action challenging the constitutionality of an almond marketing order promulgated by the Secretary of Agricul-ture under the Agricultural Marketing Agreement Act. The district court dismissed the complaint for failure to exhaust administrative remedies under the Act.

I

Congress enacted the Agricultural Marketing Agreement Act ("Act") in 1937. *See* 7 U.S.C. §§ 601–674. The Act authorizes the Secretary of Agriculture to promulgate marketing orders designed to establish and maintain orderly marketing conditions. *See* 7 U.S.C. § 608c. Marketing orders regulate the activities of processors of agricultural commodities, known under the Act as "handlers"; such commodities include almonds. The Act states that marketing orders may provide for, among other things, "the establishment of production research, marketing research and development projects designed to ... promote the marketing, distribution, and consumption or efficient production" of the particular commodity with "the expense of such projects to be paid from funds collected pursuant to the marketing order." 7 U.S.C. § 608c(6)(I). Such projects may provide for "any form of marketing promotion including paid advertising." *Id.* In addition, with respect to certain commodities (including almonds), the projects may provide for "crediting the pro rata expense assessment obligations of a handler with all or any portion of his direct expenditures for such marketing promotion including paid advertising." *Id.*

The Secretary promulgated such a marketing order regulating the marketing of almonds in California. *See* 7 C.F.R. §§ 981.1–981.474. Because Saulsbury Orchards ("Saulsbury") fits within the Act's definition of an almond handler, *see* 7 C.F.R. §§ 981.13, 981.16, it is subject to the mandates of this order.

The order establishes the Almond Board of California ("Board") and sets forth the procedures for the Board's operation as well as its powers and responsibilities.[1] The order authorizes the Board to recommend to the Secretary the level of assess-

---

1. The Board is composed of ten members. *See* 7 C.F.R. § 981.30. Five are nominated by al-mond growers and five by almond handlers.

ments and to collect any assessments the Secretary imposes on the handlers.

This action represents the second time Saulsbury has been before this court to challenge the constitutionality of the order and the assessments imposed pursuant to it. The United States initiated the first action in 1986 when it sought an injunction in federal district court to compel payment of some $300,000 in assessments which Saulsbury allegedly owed and had not paid to the Board. *See* 7 U.S.C. § 608a(6). The district court granted summary judgment in favor of the government, and ordered Saulsbury to comply with the provisions of the marketing order. The court refused to entertain Saulsbury's affirmative defenses concerning the constitutionality of the marketing order because it found that Saulsbury had not exhausted its administrative remedies. We affirmed the district court judgment. *See United States v. Saulsbury Orchards & Almond Processing, Inc.,* 857 F.2d 1479 (9th Cir.1988) (unpublished memorandum).

In April 1987, Saulsbury filed an administrative petition challenging the order under 7 U.S.C. § 608c(15)(A). The administrative law judge dismissed the petition, ruling that the petition failed to comply with procedural requirements because of its vagueness and because the constitutional issues raised were beyond the proper ambit of the section (15)(A) proceeding. Saulsbury appealed to the departmental Judicial Officer from the portion of the ALJ's decision relating to constitutional issues, and also filed an amended complaint in an attempt to correct the technical deficiencies.[2]

Meanwhile, Saulsbury filed a complaint in federal district court for the Eastern District of California, again alleging that the order is unconstitutional. Specifically, Saulsbury alleged that the order violated its first amendment rights by "forcing it to advertise" and that its due process right was violated by virtue of CAGE's control of the Board. The complaint, which names the Secretary, the former Secretary, the Board, the Manager of the Board, and six members of the Board as defendants, sought declaratory and injunctive relief against the defendants in both their official and individual capacities, and monetary damages against the defendants in their individual capacities. The district court dismissed the action, holding that Saulsbury had failed to exhaust its administrative remedies. In particular, the district court relied on the fact that Saulsbury had not, as of that time, appealed from the ALJ's decision, and thus, the Secretary had not ruled on the section (15)(A) petition.[3]

Saulsbury timely appealed to this court. We deferred submission of the case and ordered the parties to enter into settlement negotiations. The case was submitted on August 22, 1989, however, after the parties failed to reach a settlement.

## II

The Act authorizes an aggrieved handler to present an administrative petition "stating that any [marketing] order or any provision of any such order or any obligation imposed in connection [with an order] is not in accordance with law and praying for a

*See* 7 C.F.R. § 981.31. Within these two categories, representation is further allocated among persons affiliated with agricultural cooperatives and those who are not. In the California almond industry, one cooperative—the California Almond Growers Exchange ("CAGE")—has been responsible for all cooperative marketing and has accounted for more than fifty percent of the California almonds marketed. CAGE controls six seats on the Almond Board.

2. The Judicial Officer's opinion, issued in February 1988, held that Saulsbury's administrative

appeal was moot in light of the amended petition but nonetheless provided guidance to the ALJ regarding the scope of constitutional issues that can be addressed in a section 608c(15)(A) proceeding. The government moved this court to take judicial notice of the Judicial Officer's order. We grant the government's motion.

3. On June 22, 1990, one year after the last administrative hearing, the ALJ ruled that Saulsbury's first amendment rights had not been violated by the marketing order. The matter is now enmeshed in the agency's appellate process.

modification thereof or to be exempted therefrom." 7 U.S.C. § 608c(15)(A). After the Secretary has rendered a final unfavorable decision, handlers may seek judicial review in federal district court. *See* 7 U.S.C. § 608c(15)(B); 7 C.F.R. § 900.64(c) ("[N]o decision shall be final for the purpose of judicial review except a final decision issued by the Secretary pursuant to an appeal by a party to the proceeding.").

The Act has been interpreted by the Supreme Court as strictly requiring that handlers exhaust administrative remedies before seeking judicial review in federal courts. In *United States v. Ruzicka*, 329 U.S. 287, 67 S.Ct. 207, 91 L.Ed. 290 (1946), the government had brought an action, pursuant to 7 U.S.C. § 608a(6), for an injunction to force milk handlers to pay into a milk fund that was created by the Secretary. In the enforcement action, the handlers argued that the demand was based upon faulty inspection of their accounts and improper testing of their milk and milk products. The Supreme Court held that the milk handlers could not raise these defenses in an enforcement proceeding because they failed to first present the arguments in a section 608c(15)(A) administrative proceeding. *Id.* at 294, 67 S.Ct. at 210. The *Ruzicka* Court emphasized that the Act should not be interpreted as granting courts "the right to consider independently, in a proceeding by the Government for the enforcement of the Secretary's order, questions for which Congress explicitly furnished the handler an expert forum for contest with ultimate review by a district court." *Id.* at 292, 67 S.Ct. at 209–10.

Courts have repeatedly applied and extended the *Ruzicka* holding that exhaustion of administrative remedies is required under the Act before judicial review is available. *See, e.g., United States v. Riverbend Farms, Inc.*, 847 F.2d 553, 559 (9th Cir.1988) (determining that exhaustion of administrative remedies is required before handler may raise affirmative defenses in a civil forfeiture action); *Rasmussen v. Har-*

*din*, 461 F.2d 595, 597 (9th Cir.) (milk producers/handlers who had not exhausted administrative review procedures could not seek judicial review of order), *cert. denied*, 409 U.S. 933, 93 S.Ct. 230, 34 L.Ed.2d 188 (1972); *see also Block v. Community Nutrition Inst.*, 467 U.S. 340, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984) (consumers precluded from obtaining judicial review of marketing order because the statutory scheme lacks express provision allowing for consumer participation in any proceeding).

We are also mindful of the fact that the exhaustion requirement in this case is statutorily provided and not judicially created. Although judicially developed exhaustion requirements might be waived for discretionary reasons by courts, statutorily created exhaustion requirements bind the parties and the courts. "When a statute requires exhaustion, a petitioner's failure to do so deprives this court of jurisdiction. Only if there is no statutory exhaustion requirement may we exercise our discretion to apply judicially-developed exhaustion rules." *Reid v. Engen*, 765 F.2d 1457, 1462 (9th Cir.1985) (citations omitted).

Saulsbury raises several arguments that *Ruzicka* and its progeny are inapplicable to this action. First, Saulsbury argues that *Ruzicka* is distinguishable because it involved only the assertion of affirmative defenses in an enforcement action commenced by the government under section 608a(6). Saulsbury's narrow reading of *Ruzicka*, however, has been squarely rejected by this court; we have applied *Ruzicka*'s interpretation of the Act's statutory exhaustion requirement to nonenforcement cases. For example, in *Rasmussen* we considered whether a milk handler and producer could bring an action in federal district court challenging a certain milk order. In affirming the district court's dismissal of the case for failure to exhaust administrative remedies, we noted that "[t]he principles of *United States v. Ruzicka* are controlling. *Ruzicka* arose in the context of an enforcement action under Section 608a, but its principles apply with equal force to

Rasmussen's present suit." *Rasmussen*, 461 F.2d at 597 (citations omitted).

█ Saulsbury also argues that *Ruzicka* is distinguishable from the instant case because it did not concern constitutional issues. We find this argument unpersuasive. It is clear that Congress authorized the Secretary to review initially all challenges by handlers to marketing orders, including those raising constitutional concerns. Indeed, the *Ruzicka* Court observed:

Congress has provided a special procedure for ascertaining whether such an order is or is not in accordance with law. The questions are not, or may not be, abstract questions of law. *Even when they are formulated in constitutional terms,* they are questions of law arising out of, or entwined with, factors that call for understanding of the milk industry. And so Congress has provided that the remedy in the first instance must be sought from the Secretary of Agriculture. It is on the basis of his ruling, and of the elucidation which he would presumably give to his ruling, that resort may be had to the courts.

*Ruzicka*, 329 U.S. at 294, 67 S.Ct. at 210 (emphasis added). Moreover, in *Rasmussen*, we expressly followed *Ruzicka*, even though the milk producer/handler had brought an action alleging, among other things, that a milk marketing order violated the handler's constitutional due process rights. "The [*Ruzicka*] Court also indicated that this administrative remedy should be employed even though the matter to be reviewed was essentially a legal or constitutional question." *Rasmussen*, 461 F.2d at 597–98.

█ Sound policy reasons underlie the requirement that all matters be considered first by the Secretary. "[A] rule permitting handlers to challenge [constitutionality] without first exhausting their administrative remedies ... would often deprive the court of the benefit of the views of those possessed of day-to-day experience in administering the federal milk-marketing program." *American Dairy of Evansville, Inc. v. Bergland*, 627 F.2d 1252, 1271

(D.C.Cir.1980) (Robinson, J., dissenting). Furthermore, a handler's pursuit of its administrative remedies may result in relief on nonconstitutional grounds, and thus would support our prudential consideration of not reaching constitutional questions unless necessary. *See Rosenberg v. Fleuti*, 374 U.S. 449, 451, 83 S.Ct. 1804, 1806, 10 L.Ed.2d 1000 (1963) (courts have recognized a long established principle that questions of constitutionality should not be reached unless such adjudication is unavoidable).

█ Finally, Saulsbury asserts that it should be excused from the exhaustion requirement because, even if it were to prevail in the administrative proceeding, it could not obtain any monetary damages. Specifically, Saulsbury argues that, unlike the milk handlers in *Ruzicka*, almond handlers do not have a fund from which the Secretary could award monetary damages. This argument also is the basis for Saulsbury's assertion that it will suffer irreparable harm should we affirm.

We have previously indicated, however, that a remedy would be available to non-milk handlers who ultimately prevail in their petitions. In *Riverbend* we noted that "the district court, upon proper application can shape relief to protect the handler's rights in case any challenge to the marketing order is ultimately substantiated." 847 F.2d at 559; *see also Navel Orange Admin. Comm. v. Exeter Orange Co.*, 722 F.2d 449, 452 (9th Cir.1983) ("If the ultimate determination of the administrative proceeding, emanating either from the Secretary of Agriculture or from the federal courts through the statutory right of appeal, should substantiate [appellant's] challenges to the marketing orders, then refund of any assessments found not to have been due would be in order.")

█ Moreover, we note that courts have refused to open avenues for handlers to circumvent the exhaustion requirement. *See, e.g., Rasmussen*, 461 F.2d at 600 (noting that if consumers had standing under the Act it would "provide a handler with a convenient device for evading the statutory

requirement that he first exhaust administrative remedies"). Accepting Saulsbury's argument would provide all nonmilk handlers an opportunity to circumvent the exhaustion requirement. The Act, expressly and as interpreted by *Ruzicka* and its progeny, precludes the courts from reviewing a handler's challenge to a marketing order until the Secretary has rendered a final decision. Thus, under the Act, the Secretary must first review the merits of Saulsbury's administrative petition. If Saulsbury succeeds in the administrative proceedings, then, as we indicated in *Riverbend* and *Navel Orange*, we are satisfied that appropriate relief may be fashioned.

Saulsbury also cites several cases in support of its assertion that it should not be required to exhaust fully its administrative remedies because the remedies in place are inadequate, Saulsbury would suffer irreparable injury, and such exhaustion is futile in this situation. These cases, however, do not involve a statutorily mandated requirement of administrative exhaustion. The doctrine of administrative exhaustion should be applied with a regard for the particular administrative scheme at issue. *Weinberger v. Salfi*, 422 U.S. 749, 765, 95 S.Ct. 2457, 2466, 45 L.Ed.2d 522 (1975). And where a statute specifically requires exhaustion, it implies "something more than simply a codification of the judicially developed doctrine of exhaustion, and may not be dispensed with merely by a judicial conclusion of futility." *Id.* at 766, 95 S.Ct. at 2467.

We therefore conclude that the district court properly dismissed Saulsbury's action as against appellees in their official capacities.

### III

Saulsbury contends that the district court erred in dismissing its *Bivens* actions against the defendants in their individual capacities. *See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The district court determined that such actions were barred in

light of Saulsbury's failure to exhaust administrative remedies.

Although we agree with the district court's ultimate conclusion, we affirm on another ground. This court may affirm on a ground not selected by the district court "so long as the record fairly supports such an alternative disposition of the issue." *Fidelity Fin. Corp. v. Federal Home Loan Bank*, 792 F.2d 1432, 1437 (9th Cir.1986), *cert. denied*, 479 U.S. 1064, 107 S.Ct. 949, 93 L.Ed.2d 998 (1987).

■ Government officials performing discretionary functions are generally shielded from liability so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In addition, the defendant must know more than just that a generalized constitutional right exists; rather, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). "[I]n the light of pre-existing law the unlawfulness must be apparent." *Id.*

■ We conclude that the individual defendants are entitled to qualified immunity. Even if there is a right to be free of the assessments under the almond order, such a right is not so clearly established that defendants should reasonably have understood that what they were doing violated that right. We note that the statute itself authorizes the assessments and the promotional credits. *See* 7 U.S.C. § 608c(6)(I). Also, we have found no case that concludes that a handler's first amendment rights were violated by the imposition of the assessments which are authorized under the Act. Indeed, a Third Circuit case tends to support the government's contention that Saulsbury's first amendment rights were not violated. *See United States v. Frame*, 885 F.2d 1119, 1129–37 (3d Cir.1989) (holding that first amendment rights were not

violated when the Beef Promotion and Research Act of 1985 required cattle producers and importers to finance a national beef promotional campaign by paying a one dollar assessment for each head of cattle), *cert. denied*, —— U.S. ——, 110 S.Ct. 1168, 107 L.Ed.2d 1070 (1990). Similarly, due process rights have been found not to be implicated under the marketing order system; the Supreme Court has upheld the constitutionality of the system despite the fact that it may produce results with which some growers or handlers will disagree. *See United States v. Rock Royal Coop. Inc.*, 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446 (1939).[4]

## IV

Forced as we are to affirm dismissal for failure to exhaust, and despite our efforts to induce settlement, we are appalled by the failure of the Secretary to deal expeditiously with the substantial grievances alleged in this complaint. We have waited in vain since December 12, 1988 for news of a final appealable order by the Secretary. We wait no longer. We remand to the district court for determination, under 5 U.S.C. § 706(1), whether the Secretary's action has been "unreasonably delayed," in which case the district court shall order the Secretary to expedite final disposition of the administrative proceeding in this case. In addition, the district court may wish to order the Secretary to advise it promptly of the Secretary's expected final administrative decision date. Any further appeals shall be directed to the attention of this panel.

AFFIRMED IN PART AND REMANDED IN PART.

---

**4.** Because we conclude that the individual defendants are entitled to qualified immunity, we do not reach the question of whether the Act provides a comprehensive remedial scheme. *See Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983) (the existence of a comprehensive remedial scheme provided by Congress is a "special factor" that counsels hesitation in creating *Bivens* causes of action).