UNITED STATES of America, Plaintiff,

v.

M/V SANTA CLARA I, its engines, boilers, machinery, masts, boats, anchors, cables, chains, rigging, tackle, apparel, furniture, capstans, outfit, tools, pumps, pumping and other equipment, etc., in rem,

and

Kriakopoulos Internacional, S.A.; and Empressa Naviera Santa, S.A.; and Juan Alvarez, in personam, Defendants.

KYRIAKOPOULOS INTERNACIONAL, S.A.; and Empressa Naviera Santa, S.A., Third–Party Plaintiffs,

v.

COMPANIA MINERA EL INDIO; LAC Minerals; Chemical Specialities, Inc., Degesch de Chile, Ltd.; and Degesch America, Inc., Third–Party Defendants.

Civ. A. No. 2:92–0389–18.

United States District Court,
D. South Carolina,
Charleston Division.

March 9, 1993.

Ben A. Hagood, Jr., Charleston, SC, Michael J. Devine and Eileen T. McDonough, Washington, DC, for plaintiff.

Gordon Schreck and Douglas M. Muller, Charleston, SC, Charles Anderson, New York City, Mike Duffy, Newman Jackson Smith and Paul Tecklenburg, Charleston, SC, Margaret Murphy, New York City, Thomas S. Tisdale, Jr., Charleston, SC, for defendants.

## *ORDER*

NORTON, District Judge.

This matter is before the court on plaintiff's motion to dismiss defendants' counterclaim for lack of jurisdiction, pursuant to Fed.R.Civ.P. 12(b) and 12(c).

## *I. BACKGROUND*

In the late evening of January 3, 1992 or the early morning of January 4, 1992, a number of containers loaded with drums of arsenic trioxide were lost overboard from the vessel M/V SANTA CLARA I during a severe storm in the Atlantic Ocean off the coast of New Jersey.[1] The loss of the drums overboard resulted in a response by the United States, led by the United States Coast Guard (hereinafter "Coast Guard")

---

1. The M/V SANTA CLARA I was en route from New York, New York, to Baltimore, Maryland, when it encountered the storm.

with the support of the United States Environmental Protection Agency (hereinafter "EPA"), which exercised their apparent authority under section 104 of the Comprehensive Environmental Response Compensation and Liability Act (hereinafter "CERCLA") to respond to a release or a substantial threat of a release of a hazardous substance into the environment. Through the concerted efforts of the United States and defendants,[2] the Coast Guard was able to locate the position of the drums more than thirty miles offshore and under 120 to 130 feet of water.

The United States thereafter initiated this action on February 7, 1992 to recover costs incurred by the government in responding to the loss of the arsenic trioxide from the M/V SANTA CLARA I. The government's action is brought pursuant to section 107(a) of CERCLA, 42 U.S.C. § 9607. On February 20, 1992, the Coast Guard issued an Administrative/Directive Order (hereinafter "Order" or "106 Order") to defendants Kyriakopoulos Internacional, S.A. and Empressa Naviera Santa, S.A., who are owner and operator, respectively, of the M/V SANTA CLARA I. This Order, directing defendants to search for, locate, recover and dispose of the containers and drums of arsenic trioxide, was issued pursuant to the Coast Guard's authority under section 106 of CERCLA, 42 U.S.C. § 9606, section 311(c) of the Clean Water Act, 33 U.S.C. § 1321(c), and section 5 of the Intervention on the High Seas Act, 33 U.S.C. § 1474. Although defendants objected to the government's risk assessment of the arsenic trioxide to the ocean environment, they conducted the mission of locating and recovering the arsenic trioxide drums pursuant to this Order.

On April 1, 1992, defendants Kyriakopoulos Internacional, S.A. and Empressa Naviera Santa, S.A. (hereinafter sometimes collectively referred to as "counterclaimants") filed their answer and counterclaim to the plaintiff's complaint. The counterclaim is the subject of plaintiff's motion to dismiss.

In support of its motion to dismiss the counterclaim, plaintiff argues that this court lacks jurisdiction over the counterclaim, stating that the only avenue of relief available to the recipient of a section 106(a) order is section 106(b)(2), which establishes a procedure whereby the respondent may petition the EPA for reimbursement and then obtain judicial review if that petition is denied. Plaintiff states that the counterclaimants have failed to exhaust this remedy and thus, the counterclaim must be dismissed. Furthermore, plaintiff argues that the doctrine of sovereign immunity acts as a independent bar to the court's exercise of jurisdiction over the counterclaim.

In opposition to plaintiff's motion, the counterclaimants state that section 113(h) of CERCLA, 42 U.S.C. § 9613(h), gives this court jurisdiction over the counterclaim, and that the legal doctrines of sovereign immunity and exhaustion of administrative remedies asserted by plaintiff do not independently bar jurisdiction. Counterclaimants further rely on the doctrine of recoupment as a jurisdictional base.

## II. NATURE OF COUNTERCLAIM

Defendants explain the counterclaim as being two-fold. In part, the counterclaim is a request for this court to determine that defendants are entitled to reimbursement pursuant to § 106(b)(2). Defendants, however, believe that a threshold issue is whether the government had jurisdiction to issue the 106 Order at all. Defendants are thus also specifically asking this court to declare that the United States lacked authority to issue the Order, and that such Order is invalid on jurisdictional grounds. Counterclaimants summarize the characterization of their counterclaim as follows:

> If the Order issued by the United States is without jurisdiction and, thus, illegal, then Defendants maintain by way of their counterclaim that they have been directly damaged and are entitled (1) to have a judicial determination of the validity of the Order and (2) to indemnification for costs incurred in responding to the invalid Order. Defendants' entitlement to reimbursement

---

**2.** There is a dispute from the government as to the level of cooperation rendered from the counterclaimants.

under CERCLA § 106(b)(2) constitutes an alternative, affirmative basis for Defendants' recovery from the United States, in addition to this Court's fundamental ability to address the Order's underlying jurisdictional defects and redress Defendants.

Counterclaimants' Reply Memorandum, p. 10.

## III. STATUTORY BACKGROUND

### CERCLA Cleanup Procedures in General

■ CERCLA provides a comprehensive statutory scheme for cleaning up releases or threatened releases of hazardous substances.[3] CERCLA's primary purpose is the prompt cleanup of hazardous waste sites. *J.V. Peters & Co. v. Administrator, EPA*, 767 F.2d 263, 264 (6th Cir.1985).

Plaintiff's Memorandum generally describes CERCLA's scheme for evaluating and responding to a release or threatened release of hazardous substances as follows:

[T]he President may pursue three different options. *First*, he may respond directly by undertaking, with monies from the Superfund, removal or remedial action that is deemed 'necessary to protect the public health or welfare or the environment,' CERCLA section 104(a)(1), 42 U.S.C. § 9604(a)(1), and may then seek to recover the costs of the cleanup from responsible parties in an action brought pursuant to CERCLA section 107(a), 42 U.S.C. § 9607(a). *Second*, the President may bring an action in federal district court to obtain an order requiring parties to take such action as may be necessary to abate the hazardous substance danger or threat. CERCLA section 106(a), 42 U.S.C. § 9606(a). *Third*, he may issue an administrative order directing parties to take the appropriate actions. *Id.*

Plaintiff's Memorandum, p. 2–3 (citations omitted) (emphasis added).[4]

The President has delegated his authority under CERCLA to several executive agencies. Specifically, the President delegated to the Coast Guard the authority pursuant to CERCLA section 106(a) to initiate a civil action or issue an administrative order "with respect to any release or threatened release involving the coastal zone, Great Lakes waters, ports, and harbors." Exec. Order 12,-580 Sec. 4(c)(1). The Coast Guard may issue an administrative order under section 106(a) of CERCLA, as it purports to have done in the present case, when it determines that "there may be an imminent and substantial endangerment to the public health or welfare

---

3. As amended by the Superfund Amendments and Reauthorization Act of 1986, Pub.L. No. 99–499, 100 Stat. 1613 (1986) (SARA).

4. Defendants argue that not all options are available to all situations, stating that "[i]n situations involving releases from vessels, the plain language of section 106 of CERCLA clearly demonstrates that the United States does not have the statutory authority to issue an administrative order or seek a court order requiring a potentially responsible party to undertake a response action." Counterclaimants' Reply Memorandum, p. 7. Defendants believe that, with respect to responding to releases or threatened releases from *vessels*, the United States is limited to the first option. Thus, this is the basis for defendants' argument that the Order was issued without proper jurisdiction. Defendants' argument is best characterized by citing their own words:

The United States, was at all times, clearly aware of this jurisdictional limitation to CERCLA administrative orders. Knowing that section 106(a) required a showing of a release or threat of a release from a "facility," the Coast Guard endeavored to establish jurisdiction for the Order by characterizing Defendants as owners and operators of the drums of arsenic trioxide, and, in turn, alleging that such drums, which after a severe and unexpected winter storm broke their stow and fortuitously came to rest in a debris field at the bottom of the ocean, constituted facilities under CERCLA. This is nothing more than a strained sophistic attempt by the United States to circumvent clear statutory limitations set by Congress. Defendants are the owner and operator, respectively, of the M/V SANTA CLARA I, a vessel under CERCLA. Defendants never had any ownership interest in the cargo and were never the "owner," much less the "operator," of the drums in question. Further, if such drums coming to rest deep in the ocean could be considered as CERCLA "facilities," then a CERCLA section 106 order should only issue against their true owners....

*Id.* at p. 7–8. The issue of whether the United States had jurisdiction to issue the 106 Order is one going to the merits of the counterclaim. Although helpful to understanding the nature of this cause of action, a resolution of this issue is not necessary at present. The only issue this court need determine now is whether the counterclaim is properly before it.

or the environment" because of an actual or threatened release of a hazardous substance in the waters specified in the Executive Order. 42 U.S.C. § 9606(a).

## IV. ANALYSIS OF MOTION TO DISMISS THE COUNTERCLAIM

Regarding jurisdiction of this court over defendants' counterclaim, three doctrines have been raised by the parties: (1) the doctrine of exhaustion of administrative remedies; (2) the doctrine of sovereign immunity; and (3) the doctrine of recoupment. Each doctrine will be discussed below.

### A. Doctrine of Exhaustion of Administrative Remedies

#### 1. CERCLA Judicial Review

■ The meaning of CERCLA's provisions for judicial review is the critical issue for resolution of the present motion to dismiss. Basically, counterclaimants argue that section 113(h) of CERCLA provides the jurisdictional basis for their counterclaim before this court. Plaintiff, on the other hand, argues that section 106(b)(2) and its administrative remedy jurisdictional restriction governs the counterclaim.

Section 113(h) of CERCLA provides, in pertinent part:

#### (h) Timing of Review

No Federal court shall have jurisdiction under Federal law other than under section 1332 of Title 28 (relating to diversity of citizenship jurisdiction) or under State law which is applicable or relevant and appropriate under section 9621 of this title (relating to cleanup standards) to review any challenges to removal or remedial action selected under section 9604 of this title, or to review any order issued under section 9606(a) of this title, in any action except one of the following:

(1) An action under section 9607 of this title to recover response costs or damages or for contribution. : . . .

CERCLA section 113(h), 42 U.S.C. § 9613(h)(1).

Section 106(b)(2) states:

#### (b) Fines; reimbursement

(2)(A) Any person who receives and complies with the terms of any order issued under ... [CERCLA section 106(a)] may, within 60 days after completion of the required action, petition the President for reimbursement from the Fund for the reasonable costs of such action, plus interest. . . .

(B) If the President refuses to grant all or part of a petition made under this paragraph, the petitioner may within 30 days of receipt of such refusal file an action against the President in the appropriate United States district court seeking reimbursement from the Fund.[5]

CERCLA section 106(b)(2)(A) & (B), 42 U.S.C. § 9606(b)(2)(A) & (B). In order to recover its reasonable response costs from the Superfund, the person must show that it was not a liable party under CERCLA section 107(a) or that the selection of the response action ordered was arbitrary and capricious or otherwise not in accordance with law. 42 U.S.C. § 9606(b)(2)(C) & (D).

Plaintiff argues that 106(b)(2) is the sole remedy of counterclaimants and that, since counterclaimants have not petitioned the EPA for reimbursement as required by the statute, then no jurisdiction lies in this court for the counterclaim.[6] If 106(b)(2) is indeed the counterclaimants' sole remedy, then defendants' challenge to the validity of the administrative order and claim for reimbursement must be dismissed. This court must therefore determine if section 113(h) of CERCLA, as proposed by the counterclaimants, provides it with jurisdiction to review the 106 Order.

---

5. The President has delegated the review of reimbursement claims to the Administrator of the Environmental Protection Agency. Exec. Order No. 12,580 sec. 4(d)(1).

6. The counterclaim itself fails to allege that a petition for relief was sought and denied prior to filing suit. A declaration of Paul N. Connor of the EPA, attached to Plaintiff's Memorandum, verifies that the required petition for reimbursement has not been filed with the EPA.

In effect, counterclaimants construe section 113(h) as an affirmative grant of jurisdiction for judicial review of an administrative order issued pursuant to section 106(a) of CERCLA as long as a section 107 cost recovery action has been initiated. Counterclaimants cite no authority, other than the express language of the statute, for this proposition. Plaintiff fervently disagrees and states that 113(h) is not an affirmative grant of jurisdiction. Citing *North Shore Gas Co. v. EPA*, 930 F.2d 1239, 1245 (7th Cir.1991)[7] and *Reardon v. United States*, 947 F.2d 1509, 1512 (1st Cir.1991) (en banc), plaintiff argues that section 113(h) is specifically captioned "Timing of Review," and addresses only the issue of *when* the selection of a removal or remedial action under section 104 or an administrative order issued under section 106 may be reviewed. Thus, plaintiff argues that the pendency of an action under section 107 does not provide this court with jurisdiction to review the 106 order. Plaintiff states:

> Such jurisdiction can be conferred only by section 106(b)(2), which grants the Court jurisdiction only to review EPA's final decision on a petition for reimbursement. Section 113(h)(3) allows judicial review of a section 106(a) order once the requirements of section 106(b)(2) have been met. However, section 113(h)(1) does not allow review of such an order prior to the exhaustion of the administrative remedies afforded by section 106(b)(2) simply because the United States has filed a cost recovery action pursuant to section 107(a) of CERCLA.

Plaintiff's Reply Memorandum, p. 12. Plaintiff footnotes *United States v. Cordova Chem. Co. of Michigan*, 750 F.Supp. 832 (W.D.Mich. 1990), where a defendant argued that it was allowed to bring a citizen suit pursuant to section 310(a) of CERCLA, 42 U.S.C. § 9659(a), to obtain review of the remedial action at a Superfund site. The Michigan district court found that section 113(h)(4) precluded such suits unless the remedial action had been completed. The defendant

Cordova contended that the limits imposed by section 113(h)(4) no longer applied because the United States had already instituted a cost recovery action under section 107(a). The court in rejecting this argument, concluded that Congress specifically limited the review of remedial actions to after completion of the administrative process. The filing of a section 107(a) action was held not to circumvent the specific limitations imposed by section 113(h)(4) on the timing of review.

Reviewing these authorities and the statutory language itself, this court agrees with plaintiff and concludes that defendants' claim for reimbursement must first follow the administrative procedure as provided for in section 106(b)(2)(B), and only if the administrative petition for reimbursement is denied, can counterclaimants then properly seek relief before this court.

### 2. *Waiver of the Administrative Petition Element of Section 106(b)(2) of CERCLA*

The doctrine of exhaustion of administrative remedies "provides 'that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'" *McKart v. United States*, 395 U.S. 185, 192, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969) (citation omitted); *See also Darby v. Kemp*, 957 F.2d 145, 147 (4th Cir.), *cert. granted*, —— U.S. ——, 113 S.Ct. 404, 121 L.Ed.2d 330 (1992).

> The exhaustion doctrine allows an agency to exercise its discretion and apply its expertise, ensures autonomy, and avoids premature intervention by the courts.... It also 'allow[s] the courts to have [the] benefit of an agency's talents through a fully developed administrative record.'

*Darby*, 957 F.2d at 147 (citations omitted). Counterclaimants, however, argue that the court has the power to waive application of the doctrine of exhaustion of administrative remedies and should do so in this case on the

---

**7.** The *North Shore* court stated: "[I]t is notable that section 113(h) is captioned 'timing of review' and that the cases and legislative history indicate that the purpose of the section was not to defeat an aggrieved person's presumptive right of judicial review of agency action, ... but merely to postpone the exercise of the right to the completion of the remedial action...." (citations omitted).

ground that administrative proceedings would be "futile."

■ The rule of exhaustion is subject to numerous exceptions. *Id.* citing *McKart,* 395 U.S. at 192, 89 S.Ct. at 1662.

These exceptions include futility of administrative review ... and inadequacy of administrative remedies.... Further, exhaustion may be excused if its application would leave an administrative decision unreviewed.

*Id.* (citations omitted). Where the requirement of exhaustion is imposed by statute, however, it may not be waived by the courts based on allegations of futility alone. *Health Equity Resources Urbana, Inc. v. Sullivan,* 927 F.2d 963, 966 (7th Cir.1991) ("So futility is not an excuse for failure to exhaust administrative remedies, but futility plus hardship is."); *Saulsbury Orchards & Almond Processing, Inc. v. Yeutter,* 917 F.2d 1190, 1196 (9th Cir.1990) ("[W]here a statute specifically requires exhaustion, it implies something more than simply a codification of the judicially developed doctrine of exhaustion, and may not be dispensed with merely by a judicial conclusion of futility.").

■ Counterclaimants' only argument in support of waiver is "futility." Counterclaimants state that there is no rational basis to require defendants to file a futile administrative petition with the EPA when the government has already manifested its position of denial by filing this section 107(a) action. Besides futility, alone, being an ineffective excuse for failure to exhaust administrative remedies, the District of Columbia Circuit has rejected the argument that courts may assume that the government's litigation positions will control the outcome of administrative proceedings. *See Randolph–Sheppard Vendors v. Weinberger,* 795 F.2d 90, 107 (D.C.Cir.1986). Furthermore, "[t]o excuse exhaustion based on an 'unsupported allegation of futility would allow the futility exception to swallow the exhaustion rule.'" *Darby,* 957 F.2d at 148 citing *Thetford Properties IV Ltd. P'ship v. United States Dep't of Hous. & Urban Dev.,* 907 F.2d 445, 450 (4th Cir.1990).

Thus, based on the authorities cited above, this court finds no justifiable reason to waive the administrative remedial element of section 106(b)(2) of CERCLA.

## B. The Doctrine of Sovereign Immunity

The plaintiff urged the doctrine of sovereign immunity as an independent bar to any claim for reimbursement or challenge to the administrative order before this court, except pursuant to section 106(b) of CERCLA. Since this court finds that the administrative remedial confines of 106(b) govern this case, no discussion of sovereign immunity is necessary.

## C. The Doctrine of Recoupment

■ Although the counterclaim itself did not mention recoupment, counterclaimants assert in their memorandum in opposition that this doctrine provides an alternate basis for their claim. A recoupment counterclaim against the United States must meet three basic criteria: (1) it must arise out of the same transaction or occurrence that is the subject of the government's suit; (2) it must seek relief of the same kind or nature as that sought by the government; and (3) it must be purely defensive, i.e., it must seek only to defeat the government's claim and not see an affirmative recovery of damages. *See United States v. Atlas Minerals and Chemicals, Inc.,* 797 F.Supp. 411, 421 (E.D.Pa.1992); *Frederick v. United States,* 386 F.2d 481, 488 (5th Cir.1967); *United States v. Yonkers Bd. of Educ.,* 594 F.Supp. 466, 469 (S.D.N.Y. 1984). *See also generally* 6 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil 2d* § 1427, at 197–200 (1990); *United States v. Transamerica Ins. Co.,* 357 F.Supp. 743, 746 (E.D.Va.1973) (approval of reasoning in *Frederick* ).

■ Counterclaimants argue that their claim satisfies the requirements of recoupment because both the claim and counterclaim arise from the same occurrence; namely, the loss of the arsenic trioxide drums from the SANTA CLARA and the resultant response actions. Counterclaimants therefore allege that their counterclaim is compulsory under Fed.R.Civ.P. 13(a) and should not be dismissed. This court, however, agrees

with plaintiff's position and again concludes that the counterclaim must be dismissed.

 Plaintiff correctly points out that Fed. R.Civ.P. 13(a) renders compulsory only those counterclaims which "at the time of filing the pleading the pleader has against the opposing party...." [8] Based on this court's prior ruling, when the counterclaim was filed, counterclaimants did not have a reimbursement claim that could be judicially asserted against the United States because they had not yet presented their claim to the EPA. When a claim is not mature as of the date the answer is to be filed, the claim is not a compulsory counterclaim under Rule 13(a). *Young v. City of New Orleans*, 751 F.2d 794, 801 (5th Cir.1985) (citing 6 C. Wright and A. Miller, *Federal Practice and Procedure* § 1411, at 55 (1971): "A counterclaim acquired by the defendant after he has answered will not be considered compulsory, even if it arises out of the same transaction as does the plaintiff's claim.")

Furthermore, this court agrees that counterclaimants have not complied with the third requirement for recoupment in that they have not limited their counterclaim to an offset against any amount that the government might recover. Although counterclaimants note in their brief that "[r]elief in [a recoupment] ... counterclaim will be limited to the extent of diminishing or defeating the government's recovery, their counterclaim is not characterized this way.[9] While denying any liability to the United States, counterclaimants apparently seek to recover full reimbursement for their expenses incurred under the Order. Because they have further failed to limit their counterclaim to an offset, this court will not now allow counterclaimants to rely upon the doctrine of recoupment as a waiver of sovereign immunity and jurisdictional basis for the counterclaim.

8. "A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction...." Fed.R.Civ.P. 13(a).

## V. CONCLUSION

It is therefore,

**ORDERED,** that plaintiff's motion to dismiss defendants' counterclaim for lack of jurisdiction, pursuant to Fed.R.Civ.P. 12(b) and 12(c), be **GRANTED.**

**AND IT IS SO ORDERED.**

9. Furthermore, counterclaimants conceded at oral argument that a recoupment claim is limited to the extent of diminishing or defeating the government's recovery.